# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Z.Q., by his parent, G.J.;<br>G.J., individually and on behalf of Z.Q.;<br>J.H., by his parent, Y.H.;<br>Y.H., individually and on behalf of J.H.;<br>J.A., by his parent, D.S.;<br>D.S., individually and on behalf of J.A.;<br>M.S., by his parent, R.H.;<br>R.H., individually and on behalf of M.S.;<br>D.V., by his guardian, V.L.;<br>V.L., individually and on behalf of D.V.;<br>J.W., by his parent, A.W.;<br>A.W., individually and on behalf of J.W.;<br>D.M., by his parent, E.L.;<br>E.L., individually and on behalf of D.M.;<br>C.B., by his parent, C.B.2;<br>C.B.2, individually and on behalf of C.B.,<br><br>on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>        v.<br><br>NEW YORK CITY DEPARTMENT OF EDUCATION; NEW YORK CITY BOARD OF EDUCATION; RICHARD CARRANZA, in his official capacity as Chancellor of the New York City School District; NEW YORK STATE EDUCATION DEPARTMENT; NEW YORK STATE BOARD OF REGENTS; and BETTY A. ROSA, in her official capacity as Interim Commissioner of Education and President of the University of the State of New York,<br><br>        Defendants. | Civil Action No.<br><br><br><br>**JURY TRIAL REQUESTED** |

## CLASS ACTION COMPLAINT

## INTRODUCTION

1.      Plaintiffs bring this action to seek redress for Defendants' pervasive failure to meet their obligation to provide a free appropriate public education ("FAPE") to all New York City students with disabilities during the COVID-19 crisis.

2.      Both federal and New York law are clear and categorical:  school districts **must** provide a FAPE to all students with disabilities, and ***must not*** discriminate against students with disabilities.  Schools must implement the services mandated by each student's Individualized Education Program ("IEP").  These obligations continue during periods of remote learning, as the U.S. Department of Education has explicitly recognized.

3.      Nevertheless, Defendants have not met these obligations with respect to thousands of New York City students with disabilities since the onset of the pandemic.  As a result, these students have been unable to participate meaningfully in remote learning and have lost the opportunity to make educational progress.  Many have regressed.

4.      During the pandemic, Defendants have failed to provide services and programs consistent with these students' IEPs during remote learning.  These failures have been compounded by Defendants' additional failures to provide technology, translation, and interpretation services to families of students who need these resources to learn remotely, leaving these students even further behind.  And even as circumstances evolved and allowed for in-person learning, Defendants still failed to provide the in-person component to students whose disabilities require such instruction.

5.      Defendants are aware that students with disabilities have been disparately affected by the pandemic.  Indeed, Defendants have already publicly acknowledged that compensatory

services should be available for those students with disabilities who were denied their instruction and services during remote learning.

6.      Nonetheless, eight months into the pandemic, Defendants have offered no hint of a plan for processing and delivering upon claims for compensatory services owed to tens of thousands of New York City students, whose losses continue to accrue.

7.      Defendants' substantive failures have been compounded by procedural ones: Defendants have not established a plan, let alone any sufficient procedures for determining *whether* a student is entitled to compensatory services as a result of that student's inability to receive programs and services during remote learning; *what* compensatory services each student will require to put her in the position she would otherwise be in but for the denial of a FAPE; and *how* such services will be implemented.

8.      The current New York City Department of Education ("NYC DOE") administrative hearing process offers no solution to these pressing questions.  It is ill-equipped and fundamentally unable to resolve what compensatory services are due in light of the NYC DOE's admittedly large-scale failures caused by the pandemic.  The NYC DOE's due process hearing system is by its very nature adversarial—but an adversarial process here is neither appropriate nor warranted, as Defendant New York State Education Department ("NY SED") has stated.  Moreover, the students in dire need of compensatory services during remote learning need a forum that offers ***expedited*** decisions.  The formalities of the current impartial due process hearing process—petitions, motion practice, testimony, and evidence—serve to prolong the denial of critical educational services to students already deprived of them for months.  This complex legal process is prohibitively burdensome for many parents who cannot afford or do not have access to an attorney or advocate; therefore, relying on this system to administer pandemic-

related compensatory services claims is likely to leave economically disadvantaged students behind.

9.      Students with disabilities who are not receiving a FAPE due to loss of services during remote learning need compensatory services as soon as possible to prevent further loss of education and regression as remote learning continues.  Without a practicable, streamlined process to determine the compensatory services required, students with disabilities will need to file thousands of individual claims for compensatory education services in an already overwhelmed administrative process that is backlogged for months and difficult to navigate without a lawyer.  This additional strain on the NYC DOE administrative system will force even those students whose families are able to clear the initial hurdle of submitting a formal, legally adequate hearing request to wait many more months—or even years—before receiving the special education services they urgently need.  Forcing these students to wait so long for these critical services exacerbates the harm they have already suffered.

10.      While the pandemic may have made it harder to provide services, this does not discharge Defendants of their legal obligations to ensure those services are provided or to remedy the educational losses suffered by students with disabilities.  Defendants have failed to meet those obligations and have demonstrated no mechanism or plan to rectify those failures.

11.      Plaintiffs therefore bring this complaint on their own behalf and on behalf of Class members under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504"), and New York Education Law § 4002 *et seq.* ("N.Y. Educ. Law § 4002") (collectively, the "Education Laws").

12.     Plaintiffs seek to protect their interests and those of the Class by ensuring that Defendants establish, implement, and fund a set of procedures for determining whether a student with disabilities in New York City is entitled to compensatory services and what compensatory services are due to Class members in light of the educational opportunities lost during the pandemic, as well as a plan for delivering those compensatory services.

13.     Through this action, Plaintiffs seek the creation and implementation of a specific process and plan to remedy the denials of Plaintiffs' and Class members' rights, which will promptly afford these students the education to which they are legally entitled—before they fall any further behind.

## JURISDICTION AND VENUE

14.     This Court has jurisdiction under 28 U.S.C. § 1331, in that claims are asserted under the laws of the United States; under 28 U.S.C. § 1343(a), in that claims are asserted under laws providing for the protection of civil rights; and under 20 U.S.C. § 1415(i)(2) & (3) and 29 U.S.C. § 794(a).  This Court has supplemental jurisdiction over all state law claims herein asserted under 28 U.S.C. § 1367, and as such, state law claims form part of the same case or controversy as the claims for which this Court has original jurisdiction.

15.     Venue is proper in the Southern District of New York under 28 U.S.C. § 1391(b) because the NY SED operates in this judicial district, Defendant NYC DOE's principal place of business is in this district, and a substantial part of the Defendants' systemic and policy decisions giving rise to Plaintiffs' claims occurred and continue to occur here.

16.     If successful, Plaintiffs are entitled to costs and attorney's fees under 20 U.S.C. § 1415(i)(3) and 29 U.S.C. § 794a(a)(2).

## PARTIES

17.     Plaintiff Z.Q.[1] is a minor child who is a student with a disability eligible to receive special education services.  Plaintiff G.J. is the parent of Z.Q., and brings this lawsuit on behalf of herself and Z.Q.  The family resides in New York City.  Z.Q. is a child with a disability as defined under the IDEA, 20 U.S.C. § 1401(3)(A) and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

18.     Plaintiff J.H. is a minor child who is a student with a disability eligible to receive special education services.  Plaintiff Y.H. is the parent of J.H., and brings this lawsuit on behalf of herself and J.H.  The family resides in New York City.  J.H. is a child with a disability as defined under the IDEA, 20 U.S.C. § 1401(3)(A) and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

19.     Plaintiff J.A. is a minor child who is a student with a disability eligible to receive special education services.  Plaintiff D.S. is the parent of J.A., and brings this lawsuit on behalf of herself and J.A.  The family resides in New York City.  J.A. is a child with a disability as defined under the IDEA, 20 U.S.C. § 1401(3)(A) and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

20.     Plaintiff M.S. is a minor child who is a student with a disability eligible to receive special education services.  Plaintiff R.H. is the parent of M.S., and brings this lawsuit on behalf of herself and M.S.  The family resides in New York City.  M.S. is a child with a disability as defined under the IDEA, 20 U.S.C. § 1401(3)(A) and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

---

[1]  Initials are used throughout this complaint to preserve the anonymity of the children and their parents, and the confidentiality of their personal information, in conformity with Rule 5.2(a) of the Federal Rules of Civil Procedure, the privacy provisions of the IDEA, 20 U.S.C § 1417(c), and the Family Educational Rights and Privacy Act, 20 U.S.C. § 1232g.

21.     Plaintiff D.V. is a minor child who is a student with a disability eligible to receive special education services.  Plaintiff V.L. is the guardian of D.V., and brings this lawsuit on behalf of herself and D.V.  The family resides in New York City.  D.V. is a child with a disability as defined under the IDEA, 20 U.S.C. § 1401(3)(A) and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

22.     Plaintiff J.W. is a minor child who is a student with a disability eligible to receive special education services.  Plaintiff A.W. is the parent of J.W., and brings this lawsuit on behalf of herself and J.W.  The family resides in New York City.  J.W. is a child with a disability as defined under the IDEA, 20 U.S.C. § 1401(3)(A) and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

23.     Plaintiff D.M. is a minor child who is a student with a disability eligible to receive special education services.  Plaintiff E.L. is the parent of D.M., and brings this lawsuit on behalf of herself and D.M.  The family resides in New York City.  D.M. is a child with a disability as defined under the IDEA, 20 U.S.C. § 1401(3)(A) and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

24.     Plaintiff C.B. is a student with a disability eligible to receive special education services.  Plaintiff C.B.2 is the parent of C.B., and brings this lawsuit on behalf of herself and C.B.  The family resides in New York City.  C.B. is a student with a disability as defined under the IDEA, 20 U.S.C. § 1401(3)(A) and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

25.     Defendant NYC DOE, along with Defendant New York City Board of Education, is the official body charged with developing policies concerning the administration and operation of the public schools in the City of New York, including programs and services for students with disabilities.  *See* N.Y. Educ. Law §§ 2590, 2590-g.  The NYC DOE is a recipient of New York

state and federal assistance, and thus must comply with both state and federal statutory requirements under Section 504 of the Rehabilitation Act. *See* 29 U.S.C. § 794. The NYC DOE is a municipal government entity in New York City, with its principal place of business located at 52 Chambers Street, New York, New York 10007.

26.     Defendant Richard Carranza is the Chancellor of the NYC DOE ("Chancellor Carranza"), and as such, is entrusted with the specific powers and duties outlined in New York Education Law § 2590-h, including oversight of the NYC DOE's provision of education and services to students with disabilities under the IDEA and Section 504. Chancellor Carranza's principal place of business is 52 Chambers Street, New York, New York 10007.

27.     Defendant NY SED, along with the NY SED Board of Regents ("the Board of Regents"), is the official body charged with the responsibility of developing policies concerning the administration and operation of the public schools in the State of New York, including programs and services for students with disabilities in New York City. 20 U.S.C. § 1412(a)(11). NY SED is a state government entity in Albany, with its principal place of business located at 89 Washington Avenue, Albany, New York 12234.

28.     Defendant Betty A. Rosa is the interim Commissioner of Education and President of the University of the State of New York (the "Commissioner"), and as such is responsible for enforcing all laws relating to the educational system of New York State. She is responsible for executing all State educational policies, and has general supervisory authority over all schools subject to the New York State Education Law, including NYC DOE. N.Y. Educ. Law § 305(1)-(2). Commissioner Rosa's principal place of business is 89 Washington Avenue, Albany, New York 12234.

29.     Collectively, Chancellor Carranza, NYC DOE, the New York City Board of Education, the Commissioner, the Board of Regents, and NY SED are referred to herein as "Defendants."

## STATUORY EDUCATION REQUIREMENTS

I.  <u>**Statutory Requirements for Providing Education to Students with Disabilities**</u>

30.     The IDEA, 20 U.S.C. § 1400 *et seq.*, governs how state and local public agencies, such as NY SED and the NYC DOE, provide early intervention, special education, and related services to more than 6.5 million toddlers, children, and young adults with disabilities nationwide.

31.     The NYC DOE serves about 1.1 million students, including more than 200,000 students with disabilities who have IEPs.

32.     The purpose of the IDEA is "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living."  IDEA § 300.1(a), 20 U.S.C. § 1400(d)(1)(A).

33.     Under the IDEA, a FAPE is defined as an educational program that is individualized to a specific student that meets that student's unique needs, provides access to the general curriculum as appropriate to the student's needs, meets the grade-level standards established by the state, and from which the student receives educational benefit.  *See* IDEA § 300.1; 20 U.S.C. § 1401(9).

34.     Defendants are also required to provide students with disabilities a FAPE under Section 504 of the Rehabilitation Act.  *See* 34 C.F.R. § 104.33(a).

## II.     Guidance and Executive Orders Following the COVID-19 Outbreak

35.     The COVID-19 pandemic has caused unprecedented disruption in the lives of New York City students with disabilities and their families.  As the pandemic forced school closures, federal and New York state officials stressed the obligation to maintain the same level of schooling and educational opportunities for students with disabilities as for other students. Defendants, however, failed to heed these admonitions, depriving students with disabilities of a legally sufficient education.

### A.     School Closures and Related Guidance and Executive Orders on FAPE

36.     On March 12, 2020, the United States Department of Education ("US DOE") released guidance titled "Questions and Answers on Providing Services to Children with Disabilities During the Coronavirus Disease 2019 Outbreak."[2]

37.     The US DOE guidance stated, "If an LEA [local educational agency] continues to provide educational opportunities to the general student population during a school closure, the school must ensure that students with disabilities also have equal access to the same opportunities, including the provision of FAPE.  (34 C.F.R. §§ 104.4, 104.33 (Section 504) and 28 C.F.R. § 35.130 (Title II of the ADA))."[3]

38.     The US DOE guidance further stated that "SEAs [state educational agencies], LEAs, and schools must ensure that, to the greatest extent possible, each student with a disability can be provided the special education and related services identified in the student's IEP

---

[2] *Questions and Answers on Providing Services to Children with Disabilities During the Coronavirus Disease 2019 Outbreak*, U.S. Dep't of Educ. (Mar. 12, 2020), https://sites.ed.gov/idea/files/qa-covid-19-03-12-2020.pdf.

[3] *Id.* at 2.

developed under IDEA, or a plan developed under Section 504. (34 C.F.R. §§ 300.101 and 300.201 (IDEA), and 34 C.F.R. § 104.33 (Section 504))."[4]

39.     Regarding compensatory services, the US DOE stated, "If a child does not receive services during a closure, *a child's IEP team* (or appropriate personnel under Section 504) must make an individualized determination whether and to what extent compensatory services may be needed, consistent with the applicable requirements, including to make up for any skills that may have been lost."[5]

40.     On March 15, 2020, Mayor Bill de Blasio announced that New York City Public Schools would close their physical buildings starting Monday, March 16, 2020.[6]

41.     On March 16, 2020, Governor Andrew Cuomo signed Executive Order 202.4, directing all schools in New York State to close by March 18, 2020.[7]  The Executive Order further directed school districts to provide continuity of learning while schools were closed, stating that "[s]chool districts shall develop a plan for alternative instructional options, distribution and availability of meals, and child care."[8]

42.     On March 21, 2020, the US DOE Office for Civil Rights stated, "To be clear: ensuring compliance with the Individuals with Disabilities Education Act (IDEA), Section 504

---

[4] *Id.*

[5] *Id.* at Answer to A-3 (emphasis added).

[6] *See* Eliza Shapiro, *New York City Public Schools to Close to Slow Spread of Coronavirus*, N.Y. Times (Mar. 15, 2020), https://www.nytimes.com/2020/03/15/nyregion/nyc-schools-closed.html.

[7] *See* N.Y. Exec. Order No. 202.4:  Continuing Temporary Suspension and Modification of Laws Relating to the Disaster Emergency (Mar. 16, 2020), https://www.governor.ny.gov/news/no-2024-continuing-temporary-suspension-and-modification-laws-relating-disaster-emergency.

[8] *Id.*

of the Rehabilitation Act (Section 504), and Title II of the Americans with Disabilities Act should not prevent any school from offering educational programs through distance instruction."[9]

43.     It added that "[s]chool districts must provide a free and appropriate public education (FAPE) consistent with the need to protect the health and safety of students with disabilities and those individuals providing education, specialized instruction, and related services to these students."[10]

44.     On March 27, 2020, NY SED issued guidance that, under Executive Order 202.4, school districts are required to provide a FAPE during the coronavirus pandemic.[11]  This guidance further stated, "School districts must ensure that, to the greatest extent possible, each student with a disability can be provided the special education and related services identified in the student's individualized education program (IEP)."[12]

45.     On April 27, 2020, US DOE Secretary Betsy DeVos stated that the US DOE "is not recommending Congress pass any additional waiver concerning the Free and Appropriate Public Education (FAPE) and Least Restrictive Environment (LRE) requirements of the Individuals with Disabilities Act (IDEA), reiterating that learning must continue for all students during the COVID-19 national emergency."[13]

---

[9] *Supplemental Fact Sheet Addressing the Risk of COVID-19 in Preschool, Elementary and Secondary Schools While Serving Children with Disabilities*, U.S. Dep't of Educ., Off. of Civ. Rts. (Mar. 21, 2020), https://www2.ed.gov/about/offices/list/ocr/frontpage/faq/rr/policyguidance/Supple%20Fact%20Sheet%203.21.20%20FINAL.pdf.

[10] *Id.*

[11] *See* Memorandum from Christopher Suriano, Assistant Comm'r, Off. of Special Educ., N.Y. State Dep't of Educ., *Provision of Services to Students with Disabilities During Statewide School Closure Due to Novel Coronavirus (COVID-19) Outbreak in New York State* (Mar. 27, 2020), https://stateaid.nysed.gov/corona%20virus/nysed-covid-19-provision-of-services-to-swd-during-statewide-school-closure-3-27-20.pdf.

[12] *Id.* at 3.

[13] *Secretary DeVos Reiterates Learning Must Continue for All Students, Declines to Seek Congressional Waivers to FAPE, LRE Requirements of IDEA* (Apr. 27, 2020), U.S. Dep't of Educ., https://sites.ed.gov/idea/secretary-devos-declines-to-seek-congressional-fape-lre-waivers-to-idea-requirements.

46.     On May 7, 2020, Governor Cuomo signed Executive Order 202.28, closing New York schools for the remainder of the 2019–20 school year and requiring school districts to "continue plans for alternative instructional options."[14]

**B.     Guidance on Compensatory Services**

47.     Both the federal and state guidance on remote learning and on providing a FAPE to students with disabilities contemplate the need for compensatory services due to education and services lost during remote learning.

48.     Compensatory services constitute prospective equitable relief that requires a school district to fund education to remediate any earlier deprivations in the child's education. The degree or amount of compensatory services must be reasonably calculated to provide the educational benefits that likely would have accrued from special education services the school district should have supplied in the first place.

49.     In guidance released April 27, 2020, NY SED acknowledged that compensatory services will be needed for students with disabilities as a result of remote learning.  NY SED instructed school districts to make "every effort possible now to provide required special education programs and services," adding that this is "the most effective way to mitigate the need to provide compensatory services in the future."[15]

50.     NY SED's guidance further stated, "Documentation must be maintained on the instruction and services that were provided to each student so that these activities may be

---

[14] N.Y. Exec. Order No. 202.28:  Continuing Temporary Suspension and Modification of Laws Relating to the Disaster Emergency (May 7, 2020), https://www.governor.ny.gov/news/no-20228-continuing-temporary-suspension-and-modification-laws-relating-disaster-emergency.

[15] Memorandum from Christopher Suriano, Assistant Comm'r, Off. of Special Educ., N.Y. State Dep't of Educ., *Supplement 1, Provision of Services to Students with Disabilities During Statewide School Closures Due to Novel Coronavirus (COVID-19) Outbreak in New York State – Additional Questions and Answers*, at 5 (Apr. 27, 2020), http://www.p12.nysed.gov/specialed/publications/2020-memos/special-education-supplement-1-covid-qa-memo-4-27-2020.pdf.

communicated to the Committee on Special Education or Committee on Preschool Special Education . . . for consideration when making an individualized determination as to whether and to what extent compensatory services may be needed when schools reopen."[16]

51.     On June 20, 2020, NY SED again acknowledged that compensatory services will be needed for students with disabilities as a result of school closures and remote learning during COVID-19:

> The compensatory services offered [once schools reopen] must be directly linked to the denial of educational progress and achievement, including lack of progress toward the student's IEP goals and ability to participate and progress in the general education curriculum, and must be reasonably calculated to enable the student to make appropriate progress in light of his or her circumstances, including any loss in skills that occurred as a result of a student not receiving education or services due to school closures during COVID-19.  If appropriate, compensatory services could be provided in a number of ways, such as extending the school day, providing tutoring before and after school, or providing additional services during regular school hours.[17]

52.     Regarding students with disabilities who are unable to receive special education programs and services through virtual, online, or telephonic methods, NY SED stated that "the Committee [on Special Education] must determine the type and extent of compensatory services that will be provided to the student once school reopens."[18]

53.     NY SED's June 20, 2020 guidance contemplated compensatory services for students over the age of 21, stating, "Because compensatory services is a remedy for the past

---

[16] *Id.*

[17] Memorandum from Christopher Suriano, Assistant Comm'r, Off. of Special Educ., N.Y. State Dep't of Educ., *Supplement 2, Provision of Services to Students with Disabilities During Statewide School Closures Due to Novel Coronavirus (Covid-19) Outbreak In New York State - Questions and Answers*, at 5 (June 20, 2020), http://www.p12.nysed.gov/specialed/publications/2020-memos/special-education-supplement-2-covid-qa-memo-6-20-2020.pdf ("Suriano Memorandum Supplement 2").

[18] *Id.*

denial of educational and related services that were not originally provided, they are available even after the right to a FAPE has ended.  Therefore, a student's attainment of age 21 or graduation with a regular high school diploma (i.e., local or Regents diploma) does not affect his/her right to compensatory education."[19]

54.     NY SED's October 15, 2020 guidance also contemplated that compensatory services may be necessary if IEP services were missed due to lack of transportation.  This guidance explained that any failure to receive services due to transportation "may be communicated to the CPSE [(Committee on Preschool Special Education)] or CSE [(Committee on Special Education)] for consideration when making an individualized determination as to whether and to what extent compensatory services may be needed."[20]

### III.    Defendants Failed to Provide Legally Required Education to Students with Disabilities During the Pandemic, Contrary to Federal and State Guidance

55.     From the onset of remote learning necessitated by the pandemic, Defendants have failed to meet their obligations to students with disabilities under federal and state education laws.  At the most basic level, Defendants have failed to provide these students with the programs and services required by their IEPs.  In addition to identifying the program and type of class that a student with a disability requires to progress, an IEP may require that a student receive related services such as speech therapy, behavior counseling, occupational therapy, physical therapy, paraprofessional services, and other services.  Students who do not receive these programs and services can, and often do, regress.

---

[19] *Id.*

[20] Memorandum from Christopher Suriano, Assistant Comm'r, Off. of Special Educ., N.Y. State Dep't of Educ., *Frequently Asked Questions and Answers Regarding the Provision of Services to Students with Disabilities During the 2020–21 School Year* (Oct. 15, 2020), http://www.nysed.gov/common/nysed/files/programs/reopening-schools/special-education-faq-2020-21.pdf.

56. Defendants' shortcomings, however, exceed even their failure to provide the programs and services in accordance with students' IEPs. Defendants have failed to provide students with learning tools needed to access remote learning—like iPads, special sensory learning tools, or materials in a language that their parents can understand—rendering remote learning an empty promise for many. As a result, students with disabilities who are nominally receiving remote instruction have obtained no educational benefit; or have not received the same kinds of program and services that they would have received during traditional in-person instruction, and that their IEPs require as necessary to receiving an appropriate education. Having endured this deficit for the better part of a year, these students now desperately need compensatory services.

57. As discussed herein, Defendants' failures have manifested in a variety of ways, all of which served to deny students access to appropriate education and services during remote learning: (A) Defendants have failed to comply with the education laws by not providing IEP-required services during remote learning; (B) Defendants have failed to provide necessary technology for remote learning; (C) Defendants have failed to provide instruction and resources in the appropriate language; and (D) Defendants have failed to provide necessary in-person instruction.

A. **Defendants Failed to Provide Services Consistent with Students' IEPs During Remote Learning**

58. Within three weeks of physical school closures, the NYC DOE permitted schools to reduce special education services below students' IEP mandated services without a legally required IEP meeting.

59. The NYC DOE required teachers to complete abbreviated learning plans for students with disabilities by April 8, 2020 (two weeks after remote learning began for students

without disabilities) explaining what services—like counseling and specialized instruction—they would provide to the more than 200,000 students with IEPs ("Special Education Remote Learning Plans").[21]

60.     The Special Education Remote Learning Plans were not created for all students with disabilities upon the start of remote learning.  In addition to being forced to wait for remote-learning technology, students with disabilities also had to wait to receive the services and support necessary for their learning.  Moreover, the NYC DOE did not provide any remote learning plans to many students.  Nor did the DOE involve all parents in the remote learning plan process, as required.

61.     None of the Special Education Remote Learning Plans were created at a duly constituted IEP meeting, as the IDEA requires to change the services set forth in an IEP.  *See* 34 C.F.R. §§ 300.322, 300.501(a).

62.     Many students did not receive Special Education Remote Learning Plans, and those who did received plans that were woefully deficient.  The Special Education Remote Learning Plans did not reflect or provide the mandates set forth in students' IEPs.

63.     Moreover, even those students who received a Special Education Remote Learning Plan were not afforded the services described therein.

64.     Faced with these remote-learning failures, the NYC DOE revisited how to provide IEP-mandated services remotely this fall, by creating Program Adaptation Documents ("PAD") for blended and remote learning.[22]  A PAD is supposed to describe how students will receive

---

[21] *See* Alex Zimmerman, *NYC Gives the OK to Shrink Special Education Services Amid Coronavirus Upheaval*, Chalkbeat (Apr. 8, 2020), https://ny.chalkbeat.org/2020/4/8/21225484/nyc-gives-the-ok-to-shrink-special-education-services-amid-coronavirus-upheaval.

[22] *See The Special Education Program Adaptations Document (PAD)*, N.Y.C. Dep't. of Educ. (Sept. 2020), https://www.uft.org/sites/default/files/attachments/the-special-education-program-adaptations-document-pad.pdf; *Special*

their IEP-required programs and services in a remote-only or blended (combination of in-person and remote) learning environment.  While the name of the document and the description of services may have changed, students with disabilities continue to lose educational services and support during remote learning.

65.     The experiences of the named Plaintiffs described herein are typical and representative of the experiences of thousands of students with disabilities who have been denied the instruction and support they need to progress during remote learning.

**B.     Defendants Failed to Provide Necessary Technology for Remote Learning**

66.     Many New York City students with disabilities lack the necessary technology to participate in remote learning and access the special education services they require.  NYC DOE's obligation to provide a FAPE to New York City students includes providing these students with the materials necessary to access their education as described in their IEP.  This includes technology necessary for accessing the students' education and services.

67.     When NYC public schools first transitioned to remote learning, Chancellor Carranza estimated that 300,000 students lacked access to remote devices, meaning laptops or tablets with internet capabilities.[23]

68.     Defendant Chancellor Carranza announced plans to deliver iPads with T-Mobile internet connections to all 300,000 estimated students.  However, at the time of the Chancellor Carranza's announcement, the NYC DOE only had 25,000 such devices.[24]

---

*Education Program Adaptations Document (PAD) for Blended and Remote Learning*, N.Y.C. Dep't. of Educ. (Sept. 2020), https://www.includenyc.org/images/uploads/content/PAD.pdf.

[23] Suzanne Woodley et al., *U.S. Schools Trying to Teach Online Highlight a Digital Divide*, Bloomberg (Mar. 26, 2020), https://www.bloomberg.com/news/articles/2020-03-26/covid-19-school-closures-reveal-disparity-in-access-to-internet.

[24] *Id.*

69.     At the New York City Council's May 27, 2020 oversight hearing on remote learning, almost two and a half months after New York City schools went remote, the NYC DOE still could not definitively say how many students did not have appropriate devices.[25]

70.     Indeed, thousands of New York City families with students with disabilities went several months without an NYC DOE technological device.

71.     The publication THE CITY reported that five weeks after New York City moved to remote learning, 19,000 students who requested devices still did not have them.[26]  On October 16, 2020, Chancellor Carranza stated that there were still 77,000 outstanding requests for devices.[27]  And on November 18, 2020, when the schools closed again, Chancellor Carranza stated that 60,000 students were without devices, and additional students did not have WiFi to access remote learning.[28]  The many students with disabilities who went weeks without consistent access to schoolwork slipped even further behind their peers.  As discussed below, some students with disabilities did not have the technology to access remote learning throughout the spring, summer, and even fall of 2020.

---

[25] *See* Jessica Gould, *NYC Education Department Can't Say How Many Students Are Getting Live Instruction Through Remote Learning*, Gothamist (May 28, 2020), https://gothamist.com/news/nyc-education-department-cant-say-how-many-students-are-getting-live-instruction-through-remote-learning ("'We don't have exact data in terms of how many students are receiving it for how long,' said NYC DOE chief academic officer Linda Chen.").

[26] Alex Zimmerman et al., *Nearly 20K NYC Students Still Missing Promised iPads*, The City (Apr. 26, 2020), https://www.thecity.nyc/2020/4/26/21247083/nearly-20k-nyc-students-still-missing-promised-ipads.

[27] Vivian Lee, *77,000 Requests for remote Learning Devices Still Unfulfilled, City Says*, Spectrum News NY1 (Oct. 16, 2020), https://www.ny1.com/nyc/all-boroughs/education/2020/10/17/77-000-requests-for-remote-learning-devices-still-unfulfilled--city-says#:~:text=The%20city's%20schools%20chancellor%20says,get%20online%20from%20their%20homes.

[28] Christina Veiga, *NYC school buildings will shut down Thursday*, Chalkbeat (Nov. 18, 2020), https://ny.chalkbeat.org/2020/11/18/21565686/school-shutdown-nyc-chancellor.

C.     **Defendants Failed to Provide Remote Special Education Instruction and Resources in the Appropriate Language**

72.     During remote learning, the NYC DOE has failed to provide consistently the services described in the IEP for students with disabilities who are English Language Learners or Multilingual Learners.  Under federal and state law and regulations, New York school districts must ensure that English Language Learners with disabilities are receiving the services outlined in their IEPs, and schools must separately consider their language needs.

73.     State guidance emphasizes that nothing "can, or should, replace" a student's access to bilingual or other language programs, regardless of staff unavailability or scheduling conflicts.[29]

74.      During remote learning, students with disabilities were not provided instruction materials in their primary languages.  Many students with disabilities who are also English Language Learners or Multilingual Learners were not provided an interpreter or translated materials, in violation of their IEPs.  Other students only had an interpreter some days of the week.  Without translation and interpretation services, students could not access remote learning and thus could not receive educational services.

75.     In addition, parents who do not speak or read English were not provided crucial information in their primary language, including their children's remote learning plans, instructions on requesting technology, or instructions on accessing remote learning for their children.  With DOE guidance posted and distributed in English only, students who needed adult

---

[29] *Commissioner's Regulations Subparts 154-2 and 154-3, Guidance:  Determining English Language Learner/Multilingual Learner (ELL/MLL) Status of and Services for Students with Disabilities*, N.Y. State Dep't of Educ., at 15, http://www.nysed.gov/common/nysed/files/154-3-guidance_final_2_16_18.pd-a.pdf (last visited Nov. 19, 2020).

assistance to access remote learning were deprived of education services when their parents could not understand the instructions.

**D.**   **Defendants Failed to Provide In-Person Instruction when Necessary**

76.    Students with disabilities were denied in-person instruction when their disabilities made remote learning difficult, if not impossible, to access.  This was true even when in-person learning was permitted this past summer.

77.    For example, students who are unable to sit in front of a screen for extended periods of time, or have difficulty with communicating and engaging due to their disabilities, had challenges accessing their IEP-mandated services and program during remote learning. Likewise, it is more difficult to receive an educational benefit from remote provision of certain related services, such as vision therapy or physical therapy.

78.    About 39,000 New York City students receive year-round special education services, commonly referred to as twelve-month programs.  These services typically are afforded to those students who have more serious needs, including autism or communication delays, and who are at highest risk of regression over the summer.  Many of those students attend District 75 programs, which serve students with the most profound disabilities and often continue school over the summer.

79.    On June 5, 2020, Governor Cuomo signed Executive Order 202.37, which allowed "necessary" in-person special education services during summer 2020, and provided that school districts follow virus prevention guidance, such as increased cleaning of buildings and social distancing.[30]

---

[30] N.Y. Exec. Order No. 202.37: Continuing Temporary Suspension and Modification of Laws Relating to the Disaster Emergency (June 5, 2020), https://www.governor.ny.gov/news/no-20237-continuing-temporary-suspension-and-modification-laws-relating-disaster-emergency-0#:~:text=No.,Cuomo.

80.     Despite having the permission to do so, however, the NYC DOE chose not to offer in-person education for students with disabilities over the summer.[31]  As a result, many students with disabilities did not receive the programs and related services they needed over the summer.

**IV.**   **Plaintiffs and Class Members Will Continue to be Harmed by These Failures in the 2020–21 School Year, Which Are Compounded by Remote Learning**

81.     On July 2, 2020, Mayor de Blasio announced that beginning in September 2020, schools would offer blended learning for most NYC DOE students, meaning that students would be receiving some days of remote instruction each week.[32]

82.     School leaders chose among staggered schedules to accommodate dramatically fewer children and staff in buildings, with students learning remotely for the remainder of the school week.

83.     Public reports state that "[f]or some overcrowded schools that only have room to serve about a third of their normal enrollment at a given time, students might attend school every two days—though every few weeks, they would only be in class for one day.  (Some schools can accommodate even fewer than 30% of students at a time.)."[33]  Some students attended in-person instruction as little as once to twice a week, and some went more than a week without attending in person.  Even students who require in-person instruction and services to access education due to their disabilities were left with only remote learning for periods of time.

---

[31] *See* Alex Zimmerman & Reema Amin, *NYC Does Not Plan on In-Person Instruction for Students with Disabilities this Summer Despite OK from State Officials*, Chalkbeat (June 24, 2020), https://ny.chalkbeat.org /2020/6/24/21302191/nyc-summer-school-students-with-disabilities.

[32] *See* Brian Ries and Sheena Jones, *NYC Schools Will Reopen in the Fall, The Mayor Says. The Governor Says not so Fast*, CNN (July 2, 2020), https://www.cnn.com/2020/07/02/us/nyc-schools-reopening-de-blasio-trnd/index.html.

[33] Alex Zimmerman et al., *Most NYC Students Will Go to School 1, 2, or 3 Days a Week this Fall. But Key Reopening Details Remain Scarce.*, Chalkbeat (July 8, 2020), https://ny.chalkbeat.org/2020/7/8/21317392/nyc-schools-reopen-part-time.

84.     On October 26, 2020, Mayor DeBlasio announced an opt-in period for students amenable to a blended in-person and remote learning program to begin in November 2020.[34]  But three weeks later, on November 18, 2020, Mayor DeBlasio closed New York City schools again, at least through Thanksgiving 2020—thus ensuring students with disabilities will be deprived of additional weeks, and potentially months, of essential, in-person educational services.[35]

85.     Because some form of virtual instruction or remote learning will continue throughout the 2020–21 school year, Defendants' continued failures to comply with the Education Laws will require more and more students with disabilities to need compensatory services.

86.     As a result, students with disabilities who cannot access remote learning continue to be denied a FAPE during the 2020–21 school year.  These students need compensatory services to bring them to where they would be but for the denial of education and services during remote learning and school closures.

## V.     Students Who Are Aging Out of the Public School System Are Also Entitled to Compensatory Services and Will Be Denied Those Services Without Timely Relief

87.     Some students with disabilities who were denied a FAPE for the reasons described above will need to seek "extended eligibility" to receive compensatory services because they are aging out of the school system.

88.     Students in New York have a right to stay in school until the end of the school year in which they turn twenty-one, or until they earn a high school diploma, whichever happens

---

[34] *See Teaching and Learning*, N.Y.C. Dep't of Educ., https://www.schools.nyc.gov/school-year-20-21/return-to-school-2020/teaching-and-learning (last visited Nov. 18, 2020); *Special Education in Blended and Remote Settings*, N.Y.C. Dep't of Educ., https://www.schools.nyc.gov/learning/special-education/special-education-in-blended-and-remote-settings (last visited Nov. 18, 2020).

[35] *See* Jennifer Peltz, *New York City Schools to Close Again as Virus Rate Rises*, Associated Press (Nov. 19, 2020), https://apnews.com/article/nyc-schools-close-city-fights-virus-ed46b170795c6a54b1afa66ee5e695a7.

earlier.  This means that a student who turned twenty-one in June 2020 would lose his or her right to stay in school on June 26, 2020 without extended eligibility.

89.     Because some portion of the 2019–20 and 2020–21 school years have been and/or will be conducted via remote instruction, the students who lost or will lose their right to stay in school during those school years must request extended eligibility to receive compensatory services due to remote learning.  Moreover, students who are approaching the age of twenty-one may need extended eligibility to complete their credits, in light of the instruction and services lost during the period of remote learning.

90.     In September 2020, the NYC DOE announced that it would offer extended eligibility to some twenty-one-year-old students attending NYC DOE schools who, due to COVID-19 pandemic, were unable to meet graduation requirements last school year.  To qualify under this policy, the NYC DOE requires students to be reasonably expected to meet graduation requirements by June 2021.  This includes students with thirty-three or more credits, and students with fewer than thirty-three credits whose school determines could meet graduation requirements by June, if allowed to return to school.[36]

91.     In addition, the NYC DOE announced in September 2020 that it would offer extended eligibility to some students with disabilities attending NYC DOE schools whose IEPs mandate alternate assessment.  To be eligible for more time under this policy, students must:  (a) have missed instruction or services because of the transition to remote learning, (b) be showing signs of regression and have not met their IEP goals, or (c) not have postsecondary plans in place.

---

[36] *See id.*; *Special Education in Blended and Remote Settings*, *supra* note 34.

92.     The NYC DOE limited the students with disabilities who could receive extended eligibility to those students attending NYC DOE schools and announced that it would not fund tuition for twenty-one-year-old students who need more time in the state-approved non-public school ("NPS") program mandated by their IEPs.  Because the NYC DOE has already recognized that these students cannot receive a FAPE in a public school and require an NPS to progress, the refusal to fund tuition at NPSs for these students who had turned twenty-one is tantamount to a refusal to extend their eligibility, despite the denial of FAPE during remote learning.

93.     In addition, the NYC DOE did not extend eligibility to students turning twenty-one during the 2020–21 school year, or any other subsequent school year.

94.     Some students with disabilities need extended eligibility and compensatory services due to Defendants' failures to provide a FAPE during remote learning.

## VI.     Defendants Seek an Alternative Process and Plan to Address the Denial of Compensatory Services as a Result of Remote Learning

95.     Plaintiffs and Class members seek a streamlined non-adversarial process to address the compensatory services that students with disabilities will need due to remote learning.  To date, NY SED and the NYC DOE have not established a plan or any procedures for determining the process for compensatory services students with disabilities to put them to where they would be but for the denials of FAPE during remote learning, or how those compensatory services will be provided to students with disabilities.

96.     NY SED's June 20, 2020 guidance to school districts stated that the school districts' Committees on Special Education "must determine the type and extent of compensatory services that will be provided to the student. . . ."[37]

97.     At present, to obtain compensatory services, the parent or guardian for the child must file an administrative due process complaint that requests an impartial hearing before an impartial hearing officer, who ultimately issues a finding of fact and decision of law.  The hearing officer will order relief to the student if the parent prevails at the hearing, including compensatory services, extended eligibility, or both.  The IDEA requires impartial hearings to be resolved within seventy-five days.[38]

98.     But the IDEA due process hearing process in New York City is not designed or able to address all of the needs for compensatory services due to remote learning.  This process applies only to those students with disabilities whose parents filed requests for due process hearings, and are able to navigate the complicated legal process of the hearing itself.  This is particularly difficult for families who cannot afford or do not have access to an attorney or advocate.  Moreover, awarding compensatory services due to remote learning should not require the adversarial components of the IDEA administrative hearing process.

99.     To date, the NYC DOE has not established *any* process that is practically capable of addressing all of the needs for compensatory services due to remote learning.  Currently, the NYC DOE has announced that remote learning in some form will be continuing through at least the end of the 2020–21 school year in June 2021.  Students with disabilities and their families

---

[37] Suriano Memorandum Supplement 2, *supra* note 17, at 5; *see also* Question A-1 Answer, *Questions and Answers on Providing Services to Children with Disabilities During the Coronavirus Disease 2019 Outbreak*, *supra* note 2, at 2.

[38] *See* Alex Zimmerman & Yoav Gonen, *Thousands of Delayed Special Education Complaints in NYC Spark Class Action Lawsuit*, Bklyner (Feb 13. 2020), https://bklyner.com/special-education-lawsuit/.

cannot wait any longer for Defendants to establish a process for identifying and providing compensatory services. The need for these compensatory services grows with each day that remote learning continues, resulting in greater losses of educational progress and more regression.

100.    In addition, if left to the existing NYC DOE due process hearing system, students with disabilities would not receive the compensatory services they need for another year—if not longer. As of February 2020, the NYC DOE faced more than 10,000 open complaints, nearly 70% of which had blown past the legal deadline for resolution, forcing families to wait months or even years before receiving the special education services they need. Indeed, the average amount of time it takes to resolve an administrative due process complaint under the IDEA in New York City had ballooned to 259 days as of February 2020. If each of the members of the Class and Subclasses filed requests for due process hearings in connection with these students' needs for compensatory services due to remote learning, the delays and backlogs in the hearing system would increase even further.

101.    An expedited alternative to the current NYC DOE impartial due hearing process must be established to address the influx of compensatory services requests arising from remote learning and ensure appropriate and compensatory services are promptly awarded, so that students with disabilities do not fall further behind as remote learning continues.

## VII.   PLAINTIFFS' EXPERIENCES

### A.    Plaintiff Z.Q.

102.    In March 2020, Plaintiff Z.Q. was a seven-year-old student, classified with autism, in a NYC DOE school. Plaintiff Z.Q. experiences behavioral challenges resulting from Z.Q.'s autism.

103.    Z.Q.'s IEP in March 2020 required Z.Q. to be in a 12:1:1 ratio classroom (i.e., twelve students, one special education teacher, and one paraprofessional), and receive occupational therapy, physical therapy, and speech-language therapy.

104.    Z.Q.'s mother, Plaintiff G.J., speaks Spanish and does not speak English.  G.J. had difficulty assisting Z.Q. during remote instruction because the learning materials and instructions Z.Q. received were in English.

105.    In addition, because of his disability, Z.Q. was unable to meaningfully engage in the remote instruction he received.

106.    In May 2020, Z.Q.'s remote instruction services stopped completely.

107.    Plaintiff Z.Q.'s mother received a form to request in-person summer services from the NYC DOE.  Because the form was in English, G.J. could not understand or complete the form on her own.  With assistance from counsel, G.J. submitted the form to the NYC DOE. Even though G.J. applied for in-person summer services, the NYC DOE failed to provide those services.

108.    The NYC DOE has failed to provide Z.Q. with a FAPE because it has failed to provide services during remote learning in accordance with Z.Q.'s IEP.  As a result, Z.Q. has suffered substantial educational harm, and cannot wait for months or years to receive the compensatory services to make up for the education and services lost during remote learning.

**B.    Plaintiff J.H.**

109.    In March 2020, Plaintiff J.H. was an eight-year-old student, classified with autism, in a NYC DOE school.

110.    Plaintiff J.H.'s IEP requires that he be in a 6:1:1 class (i.e., six students, one special education teacher, and one paraprofessional).  His IEP also requires that the NYC DOE provide speech therapy and counseling.

111.    During the remote learning period, however, Plaintiff J.H. did not receive all of his IEP-mandated services.  Indeed, from March 2020 until June 2020, J.H. received only speech therapy and counseling, but did not receive instruction from a teacher.

112.    Plaintiff J.H. further did not receive technology necessary for remote education. Y.H, J.H.'s parent, applied to NYC DOE for an iPad for remote learning in Spring 2020, to which the NYC DOE responded that the request was "on hold."  J.H.'s parent followed up on the request, applying again in Summer 2020, and was informed again that the request was "on hold." Finally, after escalation by Plaintiffs' counsel, J.H. received an iPad in late August, five months after remote instruction began.  During these five months, J.H. was unable to regularly access remote instruction or receive services consistent with J.H.'s IEP.

113.    The NYC DOE has failed to provide J.H. with a FAPE because it has failed to provide services in accordance with J.H.'s IEP during remote learning or provide the necessary tools to access services.  As a result, J.H. has suffered substantial educational harm, and cannot wait for months or years to receive the compensatory services to make up for the education and services lost during remote learning.

C.    **Plaintiff J.A.**

114.    In March 2020, Plaintiff J.A. was a seven-year-old student, classified with emotional disturbance, in a NYC DOE school.  In April 2020, J.A. turned eight-years-old.  J.A. was a second-grade student during the 2019–20 school year.

115.    J.A.'s IEP for the 2019–20 school year required that he be placed in a 12:1:1 special education class with counseling, occupational therapy, speech-language therapy, and a paraprofessional.  During remote learning, J.A. did not receive his full related services mandate consistent with his IEP.

116.    J.A.'s remote learning was impeded by the NYC DOE's failure to provide J.A. and his mother, Plaintiff D.S., an iPad.  Because J.A. did not have an iPad, he was not able to access instruction and related services.

117.    J.A.'s remote learning was further impeded by the NYC DOE's failure to provide D.S., whose primary language is Spanish, with translated materials so that she could assist J.A. with accessing remote learning.  This also affected J.A.'s ability to receive instruction and related services as mandated by J.A.'s IEP.  The NYC DOE is fully aware that J.A.'s parent, D.S., is Spanish-speaking, as the NYC DOE has provided an IEP and PADs to D.S. in Spanish.

118.    The NYC DOE has failed to provide J.A. with a FAPE because it has failed to provide services in accordance with J.A.'s IEP during remote learning or provide the necessary tools to access services.  As a result, J.A. has suffered substantial educational harm, and cannot wait for months or years to receive the compensatory services to make up for the education and services lost during remote learning.

**D.    Plaintiff M.S.**

119.    In March 2020, Plaintiff M.S. was a seven-year-old student, classified with autism, in a NYC DOE school.  In May 2020, M.S. turned eight years old.  As a result of his autism, M.S. experiences significant speech delays.

120.    M.S.'s IEP requires that he receive twelve months of services in an 8:1:1 classroom and receive occupational therapy, physical therapy, speech language therapy, and counseling.  Because of his disability, M.S. was unable to engage fully in remote learning.

121.    M.S.'s mother, Plaintiff R.H. was not provided tools necessary to his education during remote learning.  These tools include specialized pencils or sensory toys and manipulatives that M.S. requires as a result of his disabilities.  M.S.'s IEP recognizes his need for manipulatives and tools.

122.    M.S. started a hybrid learning program in the fall 2020 school year, and was receiving in-person learning two times a week.  Even with some in-person instruction, M.S. did not receive the full scope of services described in M.S.'s IEP.

123.    The NYC DOE has failed to provide M.S. with a FAPE because it has failed to provide services in accordance with M.S.'s IEP during remote learning or provide the necessary tools to access services.  As a result, M.S. has suffered substantial educational harm, and cannot wait for months or years to receive the compensatory services to make up for the education and services lost during remote learning

E.    **Plaintiff D.V.**

124.     In March 2020, Plaintiff D.V. was a twelve-year-old seventh-grade student, diagnosed with autism, in a NYC DOE school.  In August 2020, he turned thirteen-years-old.

125.    D.V.'s IEP required the NYC DOE to provide D.V. with twelve months of services under his IEP, including counseling.

126.    Plaintiff D.V. did not receive any of his required counseling, remotely or otherwise.  As a result, D.V.'s behavior has regressed.

127.    At the end of March 2020, Plaintiff V.L., D.V.'s custodial grandparent, requested an iPad from the NYC DOE to access remote learning.  The NYC DOE sent an iPad that was locked with another user name.  V.L. submitted multiple requests to the NYC DOE to fix the iPad, but the NYC DOE did not fix it.  To date, the NYC DOE has not provided a new or functioning iPad.  D.V. has been forced to borrow a neighbor's laptop to receive remote instruction, but his access to the necessary technology is inconsistent.  As a result, D.V. has been unable to consistently access instruction and services since March 2020.

128.    The NYC DOE has failed to provide D.V. with a FAPE because it has failed to provide services in accordance with D.V.'s IEP or provide the necessary tools to access services

31

during remote learning.  As a result, D.V. has suffered substantial educational harm and cannot wait for months or years to receive the compensatory services to make up for the education and services lost during remote learning.

**F.      Plaintiff J.W.**

129.     J.W. is a fourth-grade student at a NYC DOE school during the 2019–20 school year, who is diagnosed with attention deficit hyperactivity disorder ("ADHD"), and a specific learning disorder with impairment in reading.

130.     During the 2019–20 school year, J.W.'s IEP classified him with a Learning Disability, and required integrated co-teaching with counseling once per week and speech services twice per week.

131.     J.W. failed to receive services consistent with his IEP during remote learning. J.W. received live video instruction one to two times per week, and did not receive counseling or speech services.

132.     Because of J.W.'s disability, he struggled to focus and lacked motivation to participate in his remote classes and related services.  J.W. did not make any progress during remote learning, and instead regressed.

133.     The NYC DOE has failed to provide J.W. with a FAPE because it has failed to provide services in accordance with J.W.'s IEP during remote learning.  As a result, J.W. has suffered substantial educational harm, and cannot wait for months or years to receive the compensatory services to make up for the education and services lost during remote learning.

**G.      Plaintiff D.M.**

134.     D.M is an English Language Learner who is classified with autism.  During the 2019–20 school year, he was a ninth-grade student enrolled in an Autism Spectrum Disorder ("ASD") Horizon program at a NYC DOE high school.  Because of D.M.'s academic and

language needs, D.M. struggled during remote learning to retain information and comprehend fundamental academic concepts.

135.    D.M.'s IEP requires the fulltime assistance of a bilingual paraprofessional who must interpret into Spanish for him and modify the curriculum in every class to meet his needs. D.M.'s IEP mandates that he be placed in an 8:1:1 class and receive Spanish speech therapy one time per week and monthly parent counseling and training.  As noted in his IEP during the 2019–20 school year, D.M. needs paraprofessional assistance to be motivated.

136.    There was a lapse in D.M.'s paraprofessional services prior to remote learning, and the NYC DOE did not provide new paraprofessional services until April.  Even after D.M. received the paraprofessional services, the paraprofessional was not able to provide adequate support remotely.  For example, the paraprofessional could not provide simultaneous support and interpretation while the teacher was teaching.  As a result, the paraprofessional could not interpret all of the instructions.  Because of the nature of D.M.'s language and academic abilities, he required in-person support, which he did not receive during remote learning.

137.    The NYC DOE has failed to provide D.M. with a FAPE because it has failed to provide services in accordance with D.M.'s IEP during remote learning.  As a result, D.M. has suffered substantial educational harm, and cannot wait for months or years to receive the compensatory services to make up for the education and services lost during remote learning.

### H.    Plaintiff C.B.

138.    Plaintiff C.B. is a student with visual and hearing impairments who is non-verbal and attends a NYC DOE school.  He turned twenty-one during the 2020–21 school year.  C.B.'s IEP recommends a 12:1+(3:1) class[39] with hearing education services, occupational therapy,

---

[39] *See Continuum of Special Education Services for School-Age Students with Disabilities - Questions and Answers*, N.Y. State Dep't of Educ., http://www.p12.nysed.gov/specialed/publications/policy/schoolagecontinuum-

orientation and mobility services, speech-language therapy, vision education services, and an individual full-time paraprofessional.

139.    Because of C.B.'s multiple disabilities, C.B. is unable to engage in remote learning.  During remote learning, C.B.'s mother, Plaintiff C.B.2, places C.B. in front of computer so he can be marked present, but C.B. is unable to engage with learning in any way and cannot process what is happening on the screen.

140.    In August, C.B.'s access to a private computer changed, and C.B.2 requested that the NYC DOE provide C.B. with a laptop for C.B.'s remote learning in the fall.  Although the NYC DOE acknowledged the request, months went by without C.B. receiving the laptop.

141.    Prior to the beginning of the fall 2020–21 term, C.B.2 also asked C.B.'s school if C.B. could attend in person full-time because he cannot engage in lessons remotely due to his disabilities.  C.B.'s school did not permit C.B. to attend in person full-time.  While schools were open in October and part of November, C.B. alternated between attending school in person for five days, and remote instruction for five days.

142.    Because C.B. is unable to engage in remote learning, C.B. has lost instruction and services since March 2020.

143.    Due to the loss of education since remote learning began in March 2020, C.B. requires extended eligibility to receive services and supports from the NYC DOE.  To date, the NYC DOE has not offered C.B. extended eligibility.

144.    The NYC DOE has failed to provide C.B. with a FAPE because it has failed to provide services in accordance with C.B.'s IEP during remote learning or provide the necessary

---

revNov13.htm (last updated Nov. 13, 2013) ("The maximum class size for those students with severe multiple disabilities, whose programs consist primarily of habilitation and treatment, shall not exceed 12 students.  In addition to the teacher, the staff/student ratio shall be one staff person to three students.  The additional staff may be teachers, supplementary school personnel and/or related service providers (12:1 + (3:1)).").

tools and supports to access services. As a result, C.B. has suffered substantial educational harm, and cannot wait for months or years to receive the compensatory services to make up for the education and services lost during remote learning.

## VIII. Exhaustion Is Not Required Because the Defendants' Failures and the Relief Sought Are Systemic

145.    Each of the Plaintiffs incurred their injuries as a direct result of Defendants' policies, practice, and procedures.  In particular, the NYC DOE has failed to implement an expedited system to ensure that students denied a FAPE during remote learning are able to determine whether they are entitled to compensatory services, and what compensatory services they are entitled to receive.  Plaintiffs are thus immediately harmed by the NYC DOE's systematic failure to implement policies and procedures consistent with the students' IEPs during remote learning.

146.    Because of these system-wide failures during remote learning, Plaintiffs need a streamlined, non-adversarial process for obtaining compensatory services that is independent of due process hearings.  The current hearing process is unequipped to address the unique nature and sheer volume of claims for compensatory services that arise from the NYC DOE's failures related to remote learning for students with disabilities during the pandemic.  Any need for an adversarial process has been obviated by Defendants' public acknowledgements that compensatory services will be necessary for students with disabilities who lost education during remote learning and should be provided without resorting to the hearing process.  Moreover, the thousands of claims for pandemic-related compensatory services, already long delayed, will only languish further if forced onto the clogged due process hearing track.  A specially designed and narrowly tailored process is therefore essential to provide expedient relief to students with disabilities who were denied compensatory services as a result of remote learning.

147.    NYC DOE's failure to create a process to address students' needs for compensatory services and a plan to provide those compensatory services is a systemic issue that immediately harms Plaintiffs and cannot be addressed by an impartial hearing officer during the course of the administrative due process hearing.  The issue needs to be addressed on a systemic level for reasons including, but not limited to, the severe backlog and delays of the impartial hearing system in New York City, the barriers to using the impartial hearing system for families who cannot afford representation, the need for the services quickly, the anticipated volume of claims to be processed, and the need for the Defendants to allocate sufficient resources to this purpose.

148.    The NYC DOE's systematic failures alleged in this complaint are not appropriately the subject of the impartial due hearing process under the IDEA and the Education Laws because this complaint disputes the very need for, or sufficiency of, that process to address and resolve these specific claims relating to remote learning.  Exhaustion of Plaintiffs' administrative remedies would therefore be futile because Plaintiffs claim past and future injuries due to NYC DOE's systemic failures, and because Plaintiffs seek system-wide relief that is outside the scope of individual impartial hearing officers' jurisdiction.

## CLASS ALLEGATIONS

149.    Plaintiffs bring this suit individually and as a class action under Rules 23(a), 23(b)(1), 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure, on behalf of all similarly situated individuals.

150.    The Class is defined as New York City children and young adults with disabilities attending public schools for whom the NYC DOE was or is obligated under the IDEA, Section 504, or New York Education Law § 4002 to provide a FAPE during the period of remote learning due to the COVID-19 pandemic.

36

151.    Subclass I is defined as New York City children and young adults with disabilities attending public schools for whom the NYC DOE was or is obligated to provide a FAPE under the IDEA, Section 504, or New York Education Law § 4002 during remote learning, and who are English Language Learners or Multilingual Learners who did not receive instruction or services in their language during the period of remote learning due to COVID-19.  Subclass I also includes students with disabilities whose parent's primary language is not English and who did not receive instructions on accessing remote instruction in their parent's primary language.

152.    Subclass II is defined as New York City children and young adults with disabilities attending public schools for whom the NYC DOE was obligated to provide a FAPE during remote learning under the IDEA, Section 504, or New York Education Law § 4002 who, because of their age, will lose eligibility under the IDEA at the end of the 2019–20, 2020–21, or 2021–22 school years.  Subclass II also includes students who qualified for extended eligibility under the IDEA during the 2019–20 school year.

153.    The individual Plaintiffs' claims are typical of the claims of all members of the Class and Subclasses, because they have been deprived of their rights to a FAPE.

154.    The individual Plaintiffs' claims are typical of the claims of all members of the Class and Subclasses because they have been denied an efficient process for obtaining the compensatory services that they require due to remote learning.

155.    The Class and Subclasses I and II are so numerous as to render joinder impracticable.  There are almost 240,000 students with disabilities in New York City for whom the NYC DOE is required to provide special education supports and services.[40]  As a result of

---

[40] *See NYC Public Schools:  Special Education School District Data Profile 2018-19*, N.Y. State Dep't of Educ., https://data.nysed.gov/specialed/?year=2019&instid=7889678368#EnrollmentandClassificationRate (last visited Nov. 19, 2020).

school closures and remote learning due to COVID-19, these students did not receive instruction and/or services required by their IEPs.

156.    A class action is the best available method for adjudicating these legal issues because individual litigation of these claims would be impracticable and unduly burdensome on the courts.

157.    The Class and Subclasses I and II share the common claim that Defendants were denied the services they were entitled to under the respective IEPs and therefore denied a FAPE.

158.    The Class and Subclasses I and II share the common claim that Defendants have not established criteria or expedited procedures by which students with disabilities can receive compensatory services for the services and education that were lost during the period of remote learning and school closures due to COVID-19.

159.    Plaintiffs, their representatives, and Class counsel will fairly and adequately represent the interests of the Class.  Plaintiffs and their representatives have no interests in this matter that are antagonistic to other Class members.  Class counsel has many years of experience in class action litigation and representing families of students with disabilities in connection with their claims under, *inter alia*, the IDEA, the Rehabilitation Act, and New York Education Law.

160.    If individual Class members were to prosecute separate actions, it would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for Defendants in respect to Class members entitlement to an expedited system for receipt of compensatory services due to remote learning.

161.    If individual Class members were to prosecute separate actions, it would create a risk of adjudications with respect to individual Class members that, as a practical matter, would

be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

162.    Defendants have acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

163.    This suit may be maintained as a class action under Rules 23(a), 23(b)(1), 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure because the factors of numerosity, commonality, typicality, and adequacy are present and common questions of law and fact predominate over questions affecting only individual members of the Class.  A class action is superior to other available methods for the fair and efficient adjudication of this litigation.

## FIRST CAUSE OF ACTION:
## VIOLATION OF THE INDIVIDUALS WITH DISABILITIES ACT
## (20 U.S.C. § 1400)

*As to all Defendants*

164.    Plaintiffs incorporate every allegation above as though fully set forth herein.

165.    The IDEA requires that students be provided with a FAPE.

166.    The IDEA further requires each SEA to ensure that each public agency establishes, maintains, and implements procedural safeguards that meet the requirements of the IDEA.

167.    As part of providing a FAPE, the IDEA requires that the SEAs and local school districts provide evaluations and develop IEPs, with involvement of the parents, to ensure students receive a FAPE.  These requirements explicitly require the NY SED, and by extension the NYC DOE, to provide an adequate process through which students can file a complaint to challenge the denial of services in accordance with the students IEP.

168.    Defendants have violated, and continue to violate, the IDEA by materially failing to implement the IEPs of Plaintiffs, members of the Class, and members of Subclasses I and II during remote learning and school closures, thereby denying them a FAPE.

169.    As the result of Defendants' practices during remote learning and school closures, students with disabilities have lost and will continue to lose access to educational services that they need due to their disabilities.

170.    Through their actions and omissions, Defendants failed to ensure that Plaintiffs, members of the Class, and members of Subclasses I and II receive the education to which they are entitled under the IDEA.

171.    As a result of these denials of a FAPE during remote learning and school closures, Plaintiffs, members of the Class, and members of Subclasses I and II require, and are entitled to, compensatory services.

172.    The NYC DOE's administrative hearing process is not adequate to address the harms alleged in this complaint to Plaintiffs, members of the Class, and members of Subclasses I and II.  Plaintiffs thus seek an alternative hearing process and plan to address remote learning compensatory services claims.

173.    By failing to provide appropriate remote learning IEPs, necessary technology, education in the appropriate language, and in-person instruction, and by failing to create a system by which students can timely receive the compensatory services for the denial of FAPE due to remote learning, Defendants have violated the IDEA.

174.    Any further delay in receipt of these compensatory services will cause further harm to Plaintiffs, members of the Class, and members of Subclasses I and II.

## SECOND CAUSE OF ACTION:
## VIOLATION OF SECTION 504 OF THE REHABILITATION ACT (29 U.S.C. § 794)

*As to all Defendants*

175.    Plaintiffs incorporate every allegation above as though fully set forth herein.

176.    The Rehabilitation Act requires that agencies that receive federal funding prevent individuals with disabilities from being excluded from participation in, being denied the benefits of, or being subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity.  *See* Rehabilitation Act § 794(a).

177.    The Rehabilitation Act requires school districts to provide a FAPE to students with disabilities.  34 C.F.R. § 104.33(a).

178.    Plaintiffs, members of the Class, and members of Subclasses I and II are qualified individuals under Section 504 in that their disabilities are a physical or mental impairment that substantially limits one or more major life activities, including learning.

179.    Defendants NY SED and NYC DOE receive federal financial assistance for the relevant programs.

180.    During the period of school closures and remote learning due to COVID-19, Defendants violated the civil rights of Plaintiffs, members of the Class, and members of Subclasses I and II secured by Section 504 by failing to provide Plaintiffs, members of the Class, and members of Subclasses I and II the support and services they require to learn because of their disabilities.

181.    Plaintiffs, members of the Class, and members of Subclasses I and II are suffering ongoing harm by Defendants' violations.

182.     Through their actions and omissions, Defendants failed to ensure that Plaintiffs, members of the Class, and members of Subclasses I and II receive the education, services, and accommodations to which they are entitled under Section 504.

183.     Students with disabilities have been disparately impacted as compared to students without disabilities due to the challenges in accessing and receiving remote learning due to their disability and IEP-mandated services.

184.     Defendants know that students with disabilities in New York State are entitled to equal access to the educational program and services.  Despite this, Defendants intentionally or with deliberate indifference failed to ensure that Plaintiffs, members of the Class, and members of Subclasses I and II received a FAPE and were free from discrimination on the bases of their disabilities during remote learning.

185.     By failing to provide services during remote learning consistent with the students' IEPs, Defendants denied the Plaintiffs, members of the Class, and members of Subclasses I and II a FAPE.

186.     Under Section 504, Plaintiffs, members of the Class, and members of Subclasses I and II are entitled to declaratory, injunctive, and compensatory relief to address Defendants' failures to provide a FAPE to students with disabilities during remote learning.

187.     The NYC DOE's administrative due process system under Section 504 is inadequate to address Plaintiffs' harm.  Remote learning has presented unique challenges for students with disabilities in the NYC DOE school system.  Plaintiffs' needs for compensatory services and the NYC DOE's failure to comply with students' IEPs during remote learning will require inquiries and considerations specific to remote learning that are better addressed through

a specially designed expedited process independent of the NYC DOE's impartial due process hearing process.

188.     By failing to provide appropriate remote instruction and services that meet students' needs, necessary technology, education in the appropriate language, and in-person instruction, and by failing to create a system by which Plaintiffs, members of the Class, and members of Subclasses I and II can timely receive the compensatory services they require as a result of remote learning and school closures, Defendants have violated Section 504 of the Rehabilitation Act.

### THIRD CAUSE OF ACTION:
### VIOLATION OF NEW YORK EDUCATION LAW §§ 4401, 4402, 4403

*As to all Defendants*

189.     Plaintiffs incorporate each and every allegation above as though fully set forth herein.

190.     Under New York Education Law § 4401, a "child with a disability" or "student with a disability" means a "person under the age of twenty-one who is entitled to attend public schools pursuant to section thirty-two hundred two of this chapter and who, because of mental, physical or emotional reasons can only receive appropriate educational opportunities from a program of special education."

191.     New York Education Law requires that school districts provide students with a FAPE compliant with the IDEA, and outlines the process by which a school district must evaluate students, create IEPs, and provide services to implement that student's IEP.  *See* N.Y. Educ. Law § 4401.

192.     New York Education Law further requires that school districts provide a remedy for students alleging that a public agency has violated the IDEA.  Such regulations must include,

but are not limited to, remedies for denial of appropriate services, including, as appropriate, the awarding of monetary reimbursement, compensatory services or other corrective action appropriate to the needs of the child.  N.Y. Educ. Law § 4403(19).

193.    The NYC DOE, the New York City Board of Education, and Chancellor Carranza ("City Defendants") violated, and continue to violate, New York Education Law §§ 4401, 4402, 4403 by materially failing to implement the IEPs of Plaintiffs, members of the Class, and members of Subclasses I and II during remote learning and school closures, and by failing to provide these students a remedy for their denial of appropriate services.  The NY SED has failed to ensure the City Defendants' compliance with the New York State Education laws and NY SED's guidance regarding compensatory services due to remote learning.

194.    As a result of Defendants' practice of failing to provide services required by the students' IEPs during remote learning, Plaintiffs, members of the Class, and members of Subclasses I and II have lost and will continue to lose access to educational services that they need due to their disabilities.

195.    Through their actions and omissions, Defendants failed to ensure that Plaintiffs, members of the Class, and members of Subclasses I and II receive the education to which they are entitled under New York Education Law §§ 4401 through 4403.

196.    Under New York Education Law § 4403, Plaintiffs, members of the Class, and members of Subclasses I and II are entitled to "remedies for denial of appropriate services, including, as appropriate, the awarding of monetary reimbursement, compensatory services or other corrective action appropriate to the needs of the child."

197.    The NYC DOE's administrative due process under the IDEA is not adequate to address the harms caused to Plaintiffs, members of the Class, and members of Subclasses I and II

given the specialized circumstances presented by remote learning.  A separate expedited process is necessary to ensure that students with disabilities receive, in a timely way, the services and instruction they require to put them where they would be but for the denials of FAPE during school closures and remote learning due to COVID-19.  Any further delay in receipt of these compensatory services will cause further harm to Plaintiffs, members of the Class, and members of Subclasses I and II.

198.     By failing to provide appropriate remote instruction and services that meet students' needs, necessary technology, education in the appropriate language, and in-person instruction, and by failing to create a system by which students can timely receive the compensatory services Plaintiffs, members of the Class, and members of Subclasses I and II require as a result of remote learning and school closures, Defendants have violated New York Education Law § 4401 *et seq.*

**FOURTH CAUSE OF ACTION:**
**EQUAL EDUCATIONAL OPPORTUNITIES ACT**
**(20 U.S.C. §§ 1703, 1706)**

*As to all Defendants*

199.     Plaintiffs incorporate each and every allegation above as though fully set forth herein.

200.     Section 1703 of the Equal Education Opportunities Act ("EEOA") provides that "[n]o State shall deny equal educational opportunities to an individual on account of his or her race, color, sex, or national origin, by . . . the failure by an educational agency to take appropriate action to overcome language barriers that impede equal participation by its students in its instructional programs."  20 U.S.C. § 1703(f).

201.     Z.Q. and J.A., by and through their parents G.J. and D.S., respectively, and members of Subclass I are subject to language barriers to the extent that they or their parents do

not speak English as their primary language and have a limited ability to read, speak, write or understand English.

202.    Z.Q. and J.A., by and through their parents G.J. and D.S., respectively, and members of Subclass I were unable to access remote learning because the materials, instructions for access, and communications regarding remote learning and services from Defendants were not translated.

203.    Defendants have failed to take necessary and appropriate action to overcome the language barriers of Plaintiffs, members of the Class, and members of Subclasses I by failing to provide instruction or services in those students' language(s) during the period of remote learning due to COVID-19 in violation of the EEOA.

204.    Defendants have failed to take necessary and appropriate action to overcome the language barriers of Plaintiffs, members of the Class, and members of Subclasses I by failing to provide instructions on accessing remote instruction in the primary language of the parents of students with disabilities in violation of the EEOA.

205.    As students that were denied an adequate education during remote learning in violation of the EEOA, Plaintiffs, members of the Class, and members of Subclasses I are left without adequate recourse to address Defendants' failures.  They were harmed and continue to be harmed by Defendants' violation of the EEOA.

**FIFTH CAUSE OF ACTION**
**VIOLATION OF CIVIL ACTION FOR DEPRIVATION OF RIGHTS**
**(42 U.S.C. § 1983)**

*As to all Defendants*

206.    Plaintiffs incorporate every allegation above as though fully set forth herein.

207.    Plaintiffs' rights under the IDEA are enforceable under 42 U.S.C. § 1983, and the Defendants have acted under color of state law.

208.    Defendants have acted with deliberate indifference in engaging in policies, practices, and customs that have led to these violations, despite clear notice that their policies, practices, and customs have cause the violations, and without correcting the policies, practices, and customs.

209.    These policies, practices, and customs constitute the *de facto* policy of the Defendants.

210.    Defendants have deprived Plaintiffs, members of the Class, and members of Subclasses I and II of their rights under the IDEA, Rehabilitation Act, and EEOA and the regulations promulgated thereunder, and thus have deprived Plaintiffs, members of the Class, and members of Subclasses I and II of rights secured by federal law in violation of 42 U.S.C. § 1983.

211.    Defendants have adopted a custom and practice of denying students services in accordance with their IEPs during the remote learning period.

212.    The normal recourse for these violations is through the impartial due process hearing process, but that process is functionally unavailable to Plaintiffs, members of the Class, and members of Subclasses I and II given that Defendants' customs and practices have created novel circumstances that are best addressed outside the normal, and already overburdened, impartial due hearing process.  For this reason, Defendants' customs and practices have closed the door for Plaintiffs, members of the Class, and members of Subclasses I and II to obtain relief to redress the denial of the FAPE during remote learning and left them unable to seek redress for this denial through an award of compensatory services.

213.    As a result of these violations, Plaintiffs, members of the Class, and members of

Subclasses I and II are entitled to injunctive and declaratory relief, and to costs and attorney's

fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court issue the following relief:

A.    Certify the Class and Subclasses as defined herein pursuant to Rule 23;

B.    Declare that Defendants' conduct has violated the Education Laws and 42 U.S.C.

§ 1983;

C.    Enter an injunction against Defendants that orders them to cease engaging in the

foregoing violations of law;

D.    Order Defendants to develop, implement, and fund an expedited process and plan

for remedying the lost educational opportunity of Plaintiffs, members of the

Class, and members of the Subclasses through compensatory services and

establishing criteria and procedures for efficiently and fairly providing the

compensatory services that students require;

E.    Appoint a special master to establish, coordinate, and monitor Defendants'

development of and compliance with the means of remedying lost educational

opportunity to Plaintiffs, members of the Class, and members of the Subclasses

through compensatory services;

F.    Award Plaintiffs the fees (including attorney's fees), costs, and expenses incurred

in connection with enforcing the rights of Plaintiffs, members of the Class, and

members of the Subclasses under the IDEA and Rehabilitation Act, including but

not limited to the fees (including attorney's fees), costs, and expenses incurred in

this action; and

G.     Grant Plaintiffs, members of the Class, and members of the Subclasses any such other relief the Court deems appropriate.

Dated:  November 23, 2020
        New York, New York

Respectfully submitted,

Joshua Kipnees
George A. LoBiondo
Danielle C. Quinn
PATTERSON BELKNAP WEBB
   & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036


/s/ *Rebecca C. Shore*
Rebecca C. Shore
ADVOCATES FOR CHILDREN
   OF NEW YORK, INC.
151 West 30th Street, 5th Floor
New York, New York 10001

*Attorneys for Plaintiffs*