

JAMES E. JOHNSON
*Corporation Counsel*

THE CITY OF NEW YORK
## LAW DEPARTMENT
100 CHURCH STREET
NEW YORK, NY 10007

JEFFREY S. DANTOWITZ
Room 2-121
Phone: (212) 356-0876
jdantowi@law.nyc.gov
(not for service)

January 22, 2021

**VIA ECF**
Hon. Andrew L. Carter, Jr.
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

    Re: <u>Z.Q v. NYC Dep't of Education, et al., 20 Civ. 9866 (ALC)</u>

Dear Judge Carter:

    This office represents Defendants New York City Department of Education, New York City Board of Education and Richard Carranza (collectively, the "DOE Defendants") in the above-referenced action. I write in accordance with Your Honor's Individual Practices to request a pre-motion conference in connection with the DOE Defendants' anticipated motion to dismiss the Complaint as against them.

    This putative class action is brought on behalf of students with disabilities who are attending a New York City public school. Plaintiffs allege that DOE Defendants failed to provide them with a free appropriate public education ("FAPE") during the period of remote learning occasioned by the COVID-19 pandemic, in violation of the IDEA, Section 504 of the Rehabilitation Act, and other statutes. As a result of this alleged denial of FAPE, Plaintiffs contend that they are entitled to compensatory education – that is, "prospective equitable relief" that requires a school district to fund education "as a remedy for any earlier deprivations in the child's education." *Somoza v. New York City Dep't of Educ.*, 538 F.3d 106, 109 n.2 (2d Cir. 2008) (citing *Burr v. Sobol*, 888 F.2d 258 (2d Cir.1989), *aff'g prior holding in Burr v. Ambach*, 863 F.2d 1071 (2d Cir. 1988)). Plaintiffs do not here seek specific compensatory relief, but rather complain that DOE Defendants do not have an adequate means of determining whether they are entitled to compensatory services, and what compensatory services they are entitled to receive. For relief, Plaintiffs seek an order directing DOE Defendants to implement an expedited non-adversarial process by which they will assess students' needs for and provide compensatory services. Complaint (ECF No. 1) at ¶¶ 13, 95; Prayer for Relief, ¶ D. As discussed below, Plaintiffs' Complaint should be dismissed due to their failure to exhaust their administrative remedies.

The IDEA contains a mandatory exhaustion provision that requires exhaustion of administrative remedies before the filing of a civil action. 20 U.S.C. § 1415(i)(1)(A). *See J.S. v. Attica Cent. Sch.*, 386 F.3d 107, 112 (2d Cir. 2004) ("It is well settled that the IDEA requires an aggrieved party to exhaust all administrative remedies before bringing a civil action in federal or state court[.]") The exhaustion requirement also applies to non-IDEA claims that seek relief that is available under the IDEA. 20 U.S.C. § 1415(l).

Because Plaintiffs allege a denial of FAPE and seek relief based on that alleged denial, they are required to exhaust their administrative remedies before bringing their claims to court. *See M.R. v. S. Orangetown Cent. Sch. Dist.*, 10-CV-1800, 2011 U.S. Dist. LEXIS 145177, * 39 (S.D.N.Y. Dec. 16, 2011) ("One of the matters that must be administratively exhausted in order to be reviewed in a federal court is the issue of remedies, including whether a child should receive compensatory education.") (citing cases). A plaintiff's failure to exhaust may be excused if "(1) it would be futile to resort to the IDEA's due process procedures; (2) an agency has adopted a policy or pursued a practice of general applicability that is contrary to the law; or (3) it is improbable that adequate relief can be obtained by pursuing administrative remedies." *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 297 F.3d 195, 199 (2d Cir. 2002). Though listed separately, these factors generally are analyzed under the "futility" rubric. *See, e.g., Heldman v. Sobol*, 962 F.2d 148, 159 (2d Cir. 1992) (exhaustion excused "when pursuit of the administrative remedies would be futile because the agency either was acting in violation of the law or was unable to remedy the alleged injury.") It is the plaintiffs' burden to prove the applicability of the exception. *See Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 249 (2d Cir. 2008) (citing *Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist.*, 288 F.3d 478, 488 n.8 (2d Cir. 2002) and *Honig v. Doe*, 484 U.S. 305, 327 (1988)).

Plaintiffs contend that exhaustion is not required here as a result of DOE's "policies, practice, and procedures," which Plaintiffs identify as DOE's failure "to implement an expedited system to ensure that students denied a FAPE during remote learning are able to determine whether they are entitled to compensatory services, and what compensatory services they are entitled to receive." Complaint at ¶ 145. This argument, however, conflates the alleged violative policy underlying Plaintiffs' underlying claim – *i.e.*, DOE's alleged failure "to provide services and programs consistent with these students' IEPs during remote learning" *id.* at ¶ 4 – with the relief Plaintiffs seek to address that violation -- *i.e.*, for DOE to implement an expedited, non-adversarial process by which it will assess the need for and provide compensatory services. In short, in an effort to avoid exhaustion Plaintiffs have pivoted from relying on a policy that allegedly resulted in widescale IDEA violations, to an alleged policy which, as Plaintiffs describe it, is simply the absence of the relief they seek here. Yet nowhere do Plaintiffs allege that the lack of such an expedited process itself results in a denial of FAPE or constitutes a violation of the IDEA. Nor could they.

In fact, Plaintiffs acknowledge that there are existing mechanisms by which to address an alleged denial of FAPE and through which they may obtain compensatory education services – the impartial hearing process and, to some degree, meetings of the Committee on Special Education ("CSE meeting") to discuss students' individualized education plans ("IEPs"). *See, e.g.*, ¶¶ 8, 97 (describing impartial hearing process), ¶ 54 (CSE meetings).

Plaintiffs' assertion that these mechanisms may delay relief is unavailing. In fact, Judge McMahon recently rejected this very argument, holding that "futility is not measured by

the fact that it takes time to hold hearings." *J.T. v. de Blasio*, 20 Civ. 5878, 2020 U.S. Dist. LEXIS 212663, * 130 (S.D.N.Y. Nov. 13, 2020). There, as here, "Plaintiffs conveniently do not allege that their impartial hearings have been held, let alone that no decision has been entered on a 'fully briefed' due process complaint." *Id.* Indeed, despite the fact that schools were closed almost nine months before this action was filed, no Plaintiff is alleged to have filed a due process complaint or sought to convene a CSE meeting to review their child's IEP. Given these circumstances, there simply is no support whatsoever for Plaintiffs' allegation that they are "immediately harmed by the NYC DOE's systematic failure to implement policies and procedures consistent with the students' IEPs during remote learning." Complaint at ¶ 145. Plaintiffs simply cannot avoid exhaustion either by alleging the futility of an existing process of which they failed to avail themselves, or by merely contending that DOE Defendants lack a different process they deem more desirable. Thus here, as in *J.T.*, "Plaintiffs have not come close to demonstrating futility." *J.T.*, 2020 U.S. Dist. LEXIS 212663, at * 131. *See J.M. v. Kingston City Sch. Dist.*, 1:14-CV-0542, 2015 U.S. Dist. LEXIS 157673, * 53-54 (N.D.N.Y. Nov. 23, 2015) (dismissing claim for compensatory education due to failure to exhaust). Like the claims at issue in *J.T.*, Plaintiffs claims here are "nothing but a series of individual claims," each of which needs to be exhausted. *J.T.*, 2020 U.S. Dist. LEXIS 212663, at * 109.

Moreover, Plaintiffs' contention that DOE Defendants should create a non-adversarial process for determining what compensatory services are needed wrongfully assumes that every student was, in fact, deprived of a FAPE and requires such services. Yet the determinations of whether DOE has failed to provide a student a FAPE, whether compensatory education is required to remedy such a failure and, if so, the nature and extent of such compensatory education, require the type of case-by-case inquiry for which the administrative process is best-suited and which lies at the heart of the IDEA's exhaustion requirement. *See Fry v. Napoleon Cmty. Sch.*, 137 S.Ct. 743, 754 (2017) ("The IDEA's administrative procedures test whether the school has met [its] obligation[s] – and so center[s] on the Act's FAPE requirement."). Indeed, complaints such as Plaintiffs -- which require an individual analysis of whether the students were denied FAPE and the nature and extent of any compensatory services to be provided -- are the very "textbook examples" of the types of issues the Second Circuit has found to require administrative exhaustion. *See Cave*, 514 F.3d at 246.

Based on the foregoing, DOE Defendants intend to move to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(i) for lack of subject matter jurisdiction. *Polera*, 288 F.3d 478, 483 (2d Cir. 2002) (plaintiff's failure to exhaust administrative remedies deprives court of subject matter jurisdiction). Accordingly, DOE Defendants respectfully request a pre-motion conference concerning their anticipated motion or, alternatively, that the Court dispense with the conference and issue a briefing schedule.

Thank you for your consideration of the foregoing.

Respectfully submitted,

Jeffrey S. Dantowitz
Assistant Corporation Counsel

cc:   All counsel of record
      (via ECF)