Index No. 20-CV-9866 (ALC)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Z.Q., by his parent, G.J. et al.,

                                                    Plaintiffs,

                    -against-

NEW YORK CITY DEPARTMENT OF EDUCATION, et al.,

                                                    Defendants.

## DOE DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

**JAMES E. JOHNSON**
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
  *New York City Department of Education,*
  *New York City Board of Education*
  *and Richard Carranza*
*100 Church Street*
*New York, N.Y.  10007*

*Of Counsel:  Jeffrey S. Dantowitz*
*Tel:  (212) 356-0876*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ...................................................................................... ii

PRELIMINARY STATEMENT ................................................................................ 1

FACTS ........................................................................................................................ 2

LEGAL STANDARDS ............................................................................................. 4

      A.   Dismissal under Rule 12(b)(1).................................................................. 4

      B.   IDEA Statutory Framework ...................................................................... 4

POINT II

      THE     COURT     LACKS     SUBJECT     MATTER
      JURISDICTION  OVER  THIS  ACTION  BECAUSE
      PLAINTIFFS     FAILED     TO     EXHAUST     THEIR
      ADMINISTRATIVE REMEDIES ............................................................... 8

          1.   Impartial Hearings ............................................................... 13

          2.   CSE Meetings ........................................................... .....17

CONCLUSION........................................................................................................ 20

# TABLE OF AUTHORITIES

**Cases**                                                                                                          **Pages**

*A.A. v. Board of Educ.*,
    255 F. Supp. 2d 119 (E.D.N.Y. 2003)
    *aff'd sub nom., A.A. v. Philips*, 386 F.3d 455 (2d Cir. 2004)....................................................7

*Alroy v. N.Y.C. Law Dep't*,
    69 F. Supp. 3d 393 (S.D.N.Y. 2014)........................................................................................4

*APWU v. Potter*,
    343 F.3d 619 (2d Cir. 2003)........................................................................................................4

*Bd. of Educ. v. Rowley*,
    458 U.S. 176 (1982)...........................................................................................................5, 13

*Blockbuster, Inc. v. Galeno*,
    472 F.3d 53 (2d Cir. 2006)........................................................................................................4

*Burr v. Ambach*,
    863 F.2d 1071 (2d Cir. 1988)....................................................................................................8

*Burr v. Sobol*,
    888 F.2d 258 (2d Cir.1989)......................................................................................................8

*Cave v. E. Meadow Union Free Sch. Dist.*,
    514 F.3d 240 (2d Cir. 2008)..................................................................... 6, 9, 11, 18-19

*Cerra v. Pawling Cent. Sch. Dist.*,
    427 F.3d 186 (2d Cir. 2005).....................................................................................................13

*Forest Grove Sch. Dist. v. T.A.*,
    557 U.S. 230 (2009)............................................................................................................4-5

*Fry v. Napoleon Cmty. Sch.*,
    137 S.Ct. 743 (2017)................................................................................................................12

*FW/PBS, Inc. v. City of Dallas*,
    493 U.S. 215 (1990)..................................................................................................................4

*Garro v. State of Conn.*,
    23 F.3d 734 (2d Cir. 1994).......................................................................................................8

*Grim v. Rhinebeck Cent. Sch. Dist.*,
    2002 U.S. Dist. LEXIS 26915
    (S.D.N.Y. Mar. 29, 2002),
    *rev'd on other grounds*, 2002 U.S. App. LEXIS 27934 (2d Cir. Oct. 8, 2003)........................6

*Grim v. Rhinebeck Cent. Sch. Dist.*,
    346 F.3d 377 (2d Cir. 2003)...................................................................................................13

*Hardison v. Bd. of Educ. of the Oneonta City Sch. Dist.*,
    773 F.3d 372 (2d Cir. 2014).....................................................................................................5

*Heldman v. Sobol*,
    962 F.2d 148 (2d Cir. 1992)...............................................................................................9, 11

*Hoeft v. Tucson Unified School Dist.*,
    967 F.2d 1298 (9th Cir. 1992) ........................................................................................15, 19

*Honig v. Doe*,
    484 U.S. 305 (1988)......................................................................................................5-6, 11

*Hope v. Cortines*,
    872 F. Supp. 14 (E.D.N.Y. 1995) ............................................................................................9

*J.M. v. Kingston City Sch. Dist.*,
    2015 U.S. Dist. LEXIS 157673 (N.D.N.Y. Nov. 23, 2015) ...................................................19

*J.T. v. de Blasio*,
    2020 U.S. Dist. LEXIS 212663 (S.D.N.Y. Nov. 13, 2020) ...................................8, 14, 15, 19

*Lunney v. United States*,
    319 F.3d 550 (2d Cir. 2003)....................................................................................................4

*M.H. & E.K. v. New York City Dep't of Educ.*,
    685 F.3d 217 (2d Cir. 2012)..................................................................................................13

*M.R. v. S. Orangetown Cent. Sch. Dist.*,
    2011 U.S. Dist. LEXIS 145177 (S.D.N.Y. Dec. 16, 2011) ...................................................10

*M.S. v. Yonkers Bd. of Educ.*,
    231 F.3d 96 (2d Cir. 2000)....................................................................................................13

*Makarova v. United States*,
    201 F.3d 110 (2d Cir. 2000)....................................................................................................4

*Malik v. Meissner*,
    82 F.3d 560 (2d Cir. 1996)......................................................................................................4

*Martinez v. Newsome,*
    5:20-cv-01796, 2020 U.S. Dist. LEXIS 246396
    (Cent. Dist. Cal. Nov. 24, 2020) ...................................................................................15

*Michaels v. Mills,*
    2004 U.S. Dist. LEXIS 6155 (W.D.N.Y. Feb. 14, 2004) ......................................................10

*Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.,*
    297 F.3d 195 (2d Cir. 2002)...............................................................................................5, 11

*J.S. ex rel. N.S. v. Attica Cent. Schs.,*
    386 F.3d 107 (2d Cir. 2004)...........................................................................4, 8, 9, 11, 18

*Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist.,*
    288 F.3d 478 (2d Cir. 2002)...............................................................................................9, 11

*R.E. v. New York City Dep't of Educ.,*
    694 F.3d 167 (2d Cir. 2012)...................................................................................................13

*S.W. by J.W. v. Warren,*
    528 F. Supp. 2d 282 (S.D.N.Y. 2007)....................................................................................11

*Shipping Fin. Servs. v. Drakos,*
    140 F.3d 129 (2d Cir. 1998)......................................................................................................4

*Somoza v. New York City Dep't of Educ.,*
    538 F.3d 106 (2d Cir. 2008)...............................................................................................8, 17

*T.P. v. Mamaroneck Union Free Sch. Dist.,*
    554 F.3d 247 (2d Cir. 2009).....................................................................................................13

*Thompson v. Cnty. of Franklin,*
    15 F.3d 245 (2d Cir. 1994)........................................................................................................4

*Ventura de Paulino v. New York City Dep't of Educ.,*
    959 F.3d 519 (2d Cir. 2020)......................................................................................................6

*Walczak v. Florida. Union Free Sch. Dist.,*
    142 F.3d 119 (2d Cir. 1998)...............................................................................................5, 13

## **Statutes**

34 CFR § 300.324(a)(4)(i) .....................................................................................................6, 18

34 CFR § 300.503 .......................................................................................................................18

34 CFR § 300.510(a).....................................................................................................................7

34 CFR § 300.510(a)(3)(i) ...........................................................................................................7

34 CFR § 300.510(b)(1) .................................................................................................... 7

34 CFR § 300.515(a) ........................................................................................................ 7

34 CFR § 300.515(b)(1) .................................................................................................... 7

34 CFR § 300.515(c) ........................................................................................................ 7

8 NYCRR § 200.4(e)(4) .............................................................................................. 6, 18

8 NYCRR § 200.5(a) ....................................................................................................... 18

8 NYCRR § 200.5(j)(2)(i) ................................................................................................. 7

8 NYCRR § 200.5(j)(2)(iii) ............................................................................................... 7

8 NYCRR § 200.5(j)(2)(v) ................................................................................................ 7

8 NYCRR § 200.5(j)(3)(xiii) ............................................................................................. 7

8 NYCRR § 200.5(j)(5) .................................................................................................... 7

8 NYCRR § 200.5(j)(5)(i) ................................................................................................. 7

8 NYCRR § 200.5(j)(5)(v) ................................................................................................ 7

8 NYCRR § 200.5(k)(2) .................................................................................................... 7

8 NYCRR § 279.2(b) ........................................................................................................ 7

8 NYCRR § 279.4(a) ........................................................................................................ 7

8 NYCRR § 279.4(f) ......................................................................................................... 7

8 NYCRR § 279.5(a) ........................................................................................................ 7

8 NYCRR § 279.5(b) ........................................................................................................ 7

20 U.S.C. § 1400, *et seq.* ................................................................................................ 4

20 U.S.C. § 1400(d)(1)(B), (C) ........................................................................................ 7

20 U.S.C. § 1401(3) ......................................................................................................... 5

20 U.S.C. § 1401(9) ......................................................................................................... 5

20 U.S.C. § 1414(d) ...................................................................................................... 5, 6

20 U.S.C. § 1415(b)(6) ..................................................................................................... 6

20 U.S.C. § 1415(b)(6)(A) ..................................................................................6

20 U.S.C. § 1415(c) ............................................................................................6

20 U.S.C. § 1415(f)-(i) .......................................................................................6

20 U.S.C. § 1415(f)(1)(A) ..................................................................................6

20 U.S.C. § 1415(f)(1)(B)(i) ..............................................................................7

20 U.S.C. § 1415(f)(1)(B)(ii) .............................................................................7

20 U.S.C. § 1415(g)(1) .......................................................................................6

20 U.S.C. § 1415(i)(1)(A) ..................................................................................8

20 U.S.C. § 1415(i)(2)(A) ..................................................................................6

20 U.S.C. § 1415(i)(3)(B) ................................................................................16

20 U.S.C. § 1415(l) ............................................................................................8

42 U.S.C § 1983 .................................................................................................8

Fed. R. Civ. P. 12(b)(1) ......................................................................................4

N.Y. Educ. Law § 4402 ...................................................................................2, 5

N.Y. Educ. L. § 4402(1)(b)(2)-(3) .....................................................................5

N.Y. Educ. Law § 4404(1)(a) ............................................................................6

N.Y. Educ. Law § 4404(2) .................................................................................6

N.Y. Educ. Law § 4404(3) .................................................................................6

Rehabilitation Act § 504 ..................................................................................17

## PRELIMINARY STATEMENT

Among its many obligations, the New York City Department of Education is required to provide a free appropriate public education for City students with disabilities. Should it fail to do so, a parent may bring suit seeking such a finding and appropriate relief which, under appropriate circumstances, may be an award of compensatory education services.  Prior to commencing an action in court, however, parents are required to exhaust their available administrative remedies.

In response to the COVID-19 pandemic, in March, 2020 the DOE closed its public school buildings and began teaching its students through remote learning.  For the 2020-21 school year, DOE adopted a hybrid learning model, consisting of part remote and part in-person schooling.  Plaintiffs here are students with disabilities who attended New York City public schools (and their parents) who allege that they were deprived of a free appropriate public education during the period of remote learning, and seek to have DOE create an expedited process by which such claims can be adjudicated and compensatory education awarded. Without first seeking relief through the available administrative process, Plaintiffs instead allege that they should be excused from doing so because that process is inadequate.

Defendants New York City Department of Education, New York City Board of Education and Richard Carranza (collectively, "DOE") respectfully submit this memorandum of law in support of their motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(1).  As the applicable case law makes abundantly clear, Plaintiffs are required to exhaust their administrative remedies before proceeding to court, and their failure to do so deprives this Court of subject matter jurisdiction.  Although exhaustion may be excused in very limited circumstances, Plaintiffs may not seek to avoid the exhaustion requirement simply by alleging, as they do -- and without even having attempted to engage in the administrative process -- that

the available administrative procedures are somehow inadequate to adjudicate and remedy their claims.   Indeed, permitting such an excuse would effectively eliminate the exhaustion requirement completely and allow any parent to avoid exhaustion simply by alleging that it is inadequate, or seeking relief that is not available under the applicable laws.   That Plaintiffs claims are brought as a purported class action do not alter that conclusion.   Accordingly, DOE's motion should be granted and the Complaint as against it dismissed.

## FACTS

The facts on which this motion is based are set forth in the Complaint (dkt. no. 1) and are accepted as true for purposes of this motion. A brief summary is set forth below.

In response to the COVID-19 pandemic, on March 15, 2020, Mayor de Blasio announced that all public school buildings in New York City would close and transition to remote learning.[1] Complaint, at ¶ 40.   Thereafter, on March 16, 2020, Governor Cuomo issued Executive Order ("EO") 202.4, requiring all public and private schools within New York State that were still open to be closed for a two week period ending April 1, 2020.   That directive subsequently was extended until April 15 (EO 202.11), to April 29 (EO 202.14), to May 15 (EO202.18) and ultimately through the end of the school year (EO 202.28). *See id.* at ¶ 46. Hybrid learning was instituted with the commencement of the 2020-21 school year. *Id.* at ¶ 81.

Plaintiffs    are    eight    students    with    disabilities    (and    their    respective parents/guardians), each of whom attends a City public school. *Id.* at ¶¶ 17-24. Plaintiffs allege that DOE has violated their rights under the Individuals with Disabilities Education Act ("IDEA"), Section 504 of the Rehabilitation Act and N.Y. Education  Law § 4402 to a free appropriate public education ("FAPE") in that DOE has "failed to provide services and program

---

[1]   *See*   https://www1.nyc.gov/office-of-the-mayor/news/151-20/new-york-city-close-all-school-buildings-transition-remote-learning

consistent with these students' IEPs [Individualized Educational Programs] during remote learning." *Id.* at ¶ 4. Plaintiffs particularly complain about the deprivation of a FAPE due to DOE's alleged failure "to provide technology, translation, and interpretation services to families of students who need these resources to learn remotely." *Id.*

Plaintiffs further allege that despite the apparent need for such, DOE has not developed "a plan for processing and delivering upon claims for compensatory services." *Id.* at ¶ 6. In particular, Plaintiffs contend "Defendants have not established a plan, let alone any sufficient procedures for determining *whether* a student is entitled to compensatory services as a result of that student's inability to receive programs and services during remote learning; *what* compensatory services each student will require to put her in the position she would otherwise be in but for the denial of a FAPE; and how such services will be implemented." *Id.* at ¶ 7. Notably, however, the lack of such a plan or procedures is not alleged to be a violation of the IDEA, Rehabilitation Act or N.Y. Education Law, but is included *only* in support of Plaintiffs' requested remedy. *See id.* at ¶ 13 (Plaintiffs seek "the creation and implementation of a specific process and plan to remedy the denials of Plaintiffs' and Class members' rights, which will promptly afford these students the education to which they are legally entitled.")

Although the IDEA requires plaintiffs seeking relief to have exhausted their administrative remedies before proceeding to court, Plaintiffs here did not do so, instead alleging that exhaustion is not required: "Exhaustion of Plaintiffs' administrative remedies would therefore be futile because Plaintiffs claim past and future injuries due to NYC DOE's systemic failures, and because Plaintiffs seek system-wide relief that is outside the scope of individual impartial hearing officers' jurisdiction." *Id.* at ¶ 148.

As discussed more fully below, Plaintiffs' failure to exhaust their administrative remedies is fatal to their claims and deprives this Court of subject matter jurisdiction. Such failure also makes any injury they may have suffered entirely speculative, negating any finding of irreparable injury necessary for the award of the requested injunctive relief. Accordingly, DOE's motion should be granted and the Complaint as against it dismissed.

## LEGAL STANDARDS

### A.   Dismissal under Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). In deciding a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a court "must accept as true all material factual allegations in the complaint." *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004). As the party invoking the court's jurisdiction, the plaintiff bears the burden of "showing by a preponderance of the evidence that subject matter jurisdiction exists." *Lunney v. United States*, 319 F.3d 550, 554 (2d Cir. 2003); *Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir. 1996). *See Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 57 (2d Cir. 2006); *Alroy v. N.Y.C. Law Dep't*, 69 F. Supp. 3d 393, 398 (S.D.N.Y. 2014). "'Jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it.'" *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003) (quoting *Shipping Fin. Servs. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998)). *See Thompson v. Cnty. of Franklin*, 15 F.3d 245, 248 (2d Cir. 1994) (subject matter jurisdiction "'cannot be inferred argumentatively from averments in the pleadings . . . but rather must affirmatively appear in the record'") (quoting *FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 230-31 (1990)).

### B.   IDEA Statutory Framework

Congress enacted the Individuals with Disabilities Education Act, 20 U.S.C. § 1400, *et seq.* ("IDEA") to promote the education of students with disabilities. *See Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 238-39 (2009). Pursuant to the IDEA, the school district of residence, also known as the local educational agency ("LEA"; 20 U.S.C. § 1401(19)) is required to evaluate and offer each child with a disability within its district (as defined under 20 U.S.C. § 1401(3)) a free appropriate public education ("FAPE").   FAPE is defined as special education and related services, provided at public expense, which meet the standards of the State educational agency and are provided in conformity with an Individualized Education Program ("IEP").   20 U.S.C. §§ 1401(9), 1414(d); *Bd. of Educ. v. Rowley*, 458 U.S. 176, 207 (1982).. In New York State, the formulation of IEPs is delegated to a local Committee on Special Education ("CSE"), consisting of school board representatives, educators, clinicians, and parents. N.Y. Educ. L. § 4402; *see generally Hardison v. Bd. of Educ. of the Oneonta City Sch. Dist.*, 773 F.3d 372, 376-77 (2d Cir. 2014). The CSE evaluates the student's educational status and areas for improvement. N.Y. Educ. L. § 4402(1)(b)(2)-(3). The CSE creates an IEP that outlines the goals and objectives for the student for the upcoming school year and the recommended special education and related services to attain those goals and objectives and make educational progress. 20 U.S.C. § 1414(d).   The IEP must be developed annually by "[a] school official qualified in special education, the child's teacher, the child's parents, and, where appropriate, the child." *Walczak*, 142 F.3d at 122.   As the "result of collaborations between parents, educators, and representatives of the school district," the IEP is the "'centerpiece' of the IDEA's education delivery system.'" *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 297 F.3d 195, 197 (2d Cir. 2002) (quoting *Honig v. Doe*, 484 U.S. 305, 311 (1988)).

The IDEA "establishes various procedural safeguards that guarantee parents both an opportunity for meaningful input into all decisions affecting their child's education and the right to seek review of any decisions they think inappropriate." *Honig*, 484 U.S. at 311–12. Although the IEP is required to be provided annually, 20 U.S.C. § 1414(d), a parent may request that the CSE convene to review a child's IEP and, if necessary, create a new IEP, at any time. *See* SRO appeal 19-012 (annexed hereto as Exhibit A) at 11 (citing 8 NYCRR § 200.4(e)(4)). Additionally, regulations promulgated under the IDEA provide that the parent and the LEA may agree to make changes to a child's IEP after the annual IEP Team meeting by developing a written document to amend or modify the child's current IEP. *See* 34 CFR § 300.324(a)(4)(i).

Either the parent of a student with a disability or the LEA may challenge the identification, evaluation, or educational placement of the student, or the provision of FAPE to the student, by filing a due process complaint, which commences an impartial due process hearing.  20 U.S.C. §§ 1415(b)(6), (c), (f)-(i).  *See Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 245 (2d Cir. 2008) (quoting 20 U.S.C. § 1415(b)(6)(A)).

In New York, these hearings are heard in a two-tier administrative tribunal system. *Ventura de Paulino v. New York City Dep't of Educ.*, 959 F.3d 519, 526 (2d Cir. 2020). The first tier is an impartial due process hearing before an impartial hearing officer ("IHO") that is assigned to the hearing by the LEA. *See* 20 U.S.C. § 1415(f)(1)(A); 34 CFR § 300.28(a); N.Y. Educ. Law § 4404(1)(a); *see also Grim v. Rhinebeck Cent. Sch. Dist.*, 2002 U.S. Dist. LEXIS 26915, at *101-02 (S.D.N.Y. Mar. 29, 2002), *rev'd on other grounds*, 2002 U.S. App. LEXIS 27934 (2d Cir. Oct. 8, 2003). A party dissatisfied with an IHO's decision has a right to appeal to a second tier of administrative tribunals, the Office of State Review in the New York State Education Department, where a State Review Officer ("SRO") decides the appeal. N.Y. Educ.

Law § 4404(2).  A party aggrieved by the SRO's decision may seek review in state or federal court. 20 U.S.C. § 1415(f)(1)(A), (g)(1), (i)(2)(A); N.Y. Educ. Law § 4404(3).  The timeframes for each step in the process – from filing the administrative due process complaint through issuance of the SRO's decision – are set forth in the IDEA, and the federal and State regulations.[2]

These tiers -- local, State and federal -- represent a purposeful result of the statutory "partnership" established between "federal, state and local governments and agencies ... to ensure that the goals of the IDEA are met." *A.A. v. Board of Educ.*, 255 F. Supp. 2d 119, 124

---

[2]  The IDEA, as well as State and federal regulations, provide that, within 15 days of the receipt of the due process complaint notice, the school district shall convene a resolution meeting where the parents discuss their complaint and the school district has an opportunity to resolve that complaint with the parents and the relevant members of the CSE. 20 U.S.C. § 1415(f)(1)(B)(i); 34 CFR § 300.510(a); 8 NYCRR § 200.5(j)(2)(i).  If the matter is not resolved within 30 days from the receipt of the due process complaint, the parties may proceed to an impartial hearing 20 U.S.C. § 1415(f)(1)(B)(ii); 34 CFR § 300.510(b)(1); 8 NYCRR § 200.5(j)(2)(v).  The resolution meeting may be waived if both the parent and the district agree in writing to do so. 34 CFR § 300.510(a)(3)(i); 8 NYCRR § 200.5(j)(2)(iii).

The IHO is required to render a decision not later than 45 days after the expiration of the 30-day resolution period or the applicable adjusted time periods. 34 CFR § 300.515(a); 8 NYCRR § 200.5(j)(5)), unless an extension has been granted at the request of either party (34 CFR § 300.515(c); 8 NYCRR § 200.5(j)(5)(i).  Additionally, State regulations further set forth that each party shall have "up to one day" to present its case, and additional hearing days shall be scheduled on consecutive days to the extent practical. 8 NYCRR § 200.5(j)(3)(xiii). If an IHO has granted an extension to the regulatory timelines, State regulation requires that the IHO issue a decision within 14 days of the date the IHO closes the hearing record. 8 NYCRR § 200.5(j)(5). Pursuant to State regulation, an IHO shall determine when the record is closed and notify the parties of the date the record is closed. 8 NYCRR § 200.5(j)(5)(v).

A party aggrieved by an IHO decision may appeal to the SRO by serving on the opposing party a Notice of Intent to Seek Review no later than 25 days from the date of the IHO decision to be reviewed (8 NYCRR § 279.2(b)), and a Notice of Request for Review and a Request for Review within 40 days of IHO decision (8 NYCRR § 279.4(a).  The Respondent has 5 business days to answer and cross-appeal, if desired.  8 NYCRR §§ 279.5(a), 279.4(f).  The Petitioner has 5 business days to answer the cross-appeal.  8 NYCRR § 279.5(b).  The SRO has 30 days from receipt of the request for review to issue a final decision.  34 CFR § 300.515(b)(1); 8 NYCRR § 200.5(k)(2).

(E.D.N.Y. 2003) (citing 20 U.S.C. § 1400(d)(1)(B), (C), *aff'd sub nom.*, *A.A. v. Philips*, 386 F.3d 455 (2d Cir. 2004)).

Upon a showing of a violation of the IDEA, a parent may, as one form of relief, seek compensatory education – that is, "prospective equitable relief" that requires a school district "to fund education beyond the expiration of a child's eligibility as a remedy for any earlier deprivations in the child's education." *Somoza v. New York City Dep't of Educ.*, 538 F.3d 106, 109 n.2 (2d Cir. 2008) (citing *Burr v. Sobol*, 888 F.2d 258 (2d Cir.1989), *aff'g prior holding in Burr v. Ambach*, 863 F.2d 1071 (2d Cir. 1988)).   Whether and the extent to which, compensatory education is to be awarded is necessarily determined on a case-by-case basis after considering the effect of the denial of FAPE on the student, and what, if any compensatory education may be appropriate. However, "an award of compensatory education is appropriate only for gross violations of the IDEA."  *Somoza*, 538 F.3d at 109 n.2 (citing *Garro v. State of Conn.*, 23 F.3d 734, 737 (2d Cir. 1994)).

### POINT II

### THE COURT LACKS SUBJECT MATTER JURISDICTION OVER THIS ACTION BECAUSE PLAINTIFFS FAILED TO EXHAUST THEIR ADMINISTRATIVE REMEDIES

The IDEA contains a mandatory exhaustion provision that requires exhaustion of administrative remedies before the filing of a civil action. 20 U.S.C. § 1415(i)(1)(A). *See J.S.*, 386 F.3d at 112 ("It is well settled that the IDEA requires an aggrieved party to exhaust all administrative remedies before bringing a civil action in federal or state court[.]").   The exhaustion requirement also applies to non-IDEA claims that seek relief that is available under the IDEA.  20 U.S.C. § 1415(l).  Thus, for example, the exhaustion requirement applies to claims brought under the Rehabilitation Act, New York State Constitution and regulations, and 42

U.S.C § 1983 based on an alleged denial of FAPE.  *See J.T. v. de Blasio*, 2020 U.S. Dist. LEXIS 212663, * 125-26 (S.D.N.Y. Nov. 13, 2020) (appeal pending) (collecting cases); *J.S.*, 386 F.3d at 112.  "A plaintiff's failure to exhaust administrative remedies under the IDEA deprives a court of subject matter jurisdiction." *Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist.*, 288 F.3d 478, 483 (2d Cir. 2002)).

        As the Second Circuit has explained, the purpose of administrative exhaustion in IDEA cases is to "'channel disputes related to the education of disabled children into an administrative process that could apply administrators' expertise in the area and promptly resolve grievances.'" *Cave*, 514 F.3d at 245-46 (quoting *Polera*, 288 F.3d at 487).  Thus, the exhaustion requirement "allows for the exercise of discretion and educational expertise by state and local agencies, affords full exploration of technical educational issues, furthers development of a complete factual record, and promotes judicial efficiency by giving these agencies the first opportunity to correct shortcomings in their educational programs for disabled children." *Polera*, 288 F.3d at 487; *Heldman v. Sobol,* 962 F.2d 148, 159 n. 17 (2d Cir. 1992) ("The exhaustion doctrine prevents courts from undermining the administrative process and permits an agency to bring its expertise to bear on a problem as well as to correct its own mistakes.")  At a minimum, this process "will at least have produced a helpful record because administrators versed in the relevant issues were able to probe and illuminate those issues for the federal court."  *J.S.*, 386 F.3d at 113.  Any challenge to the adequacy of a disabled student's IEP, educational program, or the administration of a disabled student's education, whether made directly, or indirectly is "'a textbook example of the types of cases justifying administrative exhaustion.'" *Cave*, 514 F.3d at 246 (quoting *Hope v. Cortines*, 872 F. Supp. 14, 21 (E.D.N.Y. 1995)).

The gravamen of Plaintiffs' Complaint here concerns an alleged widescale denial of FAPE – that is, Plaintiffs contend that an alleged lack of services during remote learning has resulted, in a variety of ways, in the denial of FAPE for students with a disability who attended a New York City public school in that DOE "failed to provide services and program consistent with these students' IEPs [Individualized Educational Programs] during remote learning." Complaint, at ¶ 4.  As a result of this alleged denial of FAPE, Plaintiffs contend that each member of the putative class is entitled to compensatory education.

Because Plaintiffs allege a denial of FAPE and seek relief based on that alleged denial, they are required to exhaust their administrative remedies before bringing their claims to court. *See M.R. v. S. Orangetown Cent. Sch. Dist.*, 2011 U.S. Dist. LEXIS 145177, *39 (S.D.N.Y. Dec. 16, 2011) ("One of the matters that must be administratively exhausted in order to be reviewed in a federal court is the issue of remedies, including whether a child should receive compensatory education.") (citing cases). *See also Michaels v. Mills*, 2004 U.S. Dist. LEXIS 6155, *16 (W.D.N.Y. Feb. 14, 2004) ("Plaintiff's compensatory education claim, however, involves both factual and legal questions. Exhaustion is thus required because factual issues are best left to the expertise of the involved agencies rather than the courts. For example, it is unclear how much compensatory education plaintiff may be entitled to or what form it ought to take.")

None of the named Plaintiffs, however, has alleged satisfaction with the exhaustion requirement.  In fact, the Complaint acknowledges as much and instead alleges that exhaustion is not required because the current system for addressing these problems – the impartial hearing process – is allegedly inadequate to address these individual issues because the system is overwhelmed. Thus, although longstanding and established systems for providing such

relief already exists through the impartial hearing process, Plaintiffs seek the establishment of a more expedited process.  As discussed below, however, Plaintiffs' argument against exhaustion is unavailing.

A plaintiff's failure to exhaust may be excused if "(1) it would be futile to resort to the IDEA's due process procedures; (2) an agency has adopted a policy or pursued a practice of general applicability that is contrary to the law; or (3) it is improbable that adequate relief can be obtained by pursuing administrative remedies."  *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 297 F.3d 195, 199 (2d Cir. 2002). Though listed separately, these factors generally are analyzed under the "futility" rubric.  *See, e.g., Heldman*, 962 F.2d at 15 (exhaustion excused "when pursuit of the administrative remedies would be futile because the agency either was acting in violation of the law or was unable to remedy the alleged injury.")  As the Court in *J.S.* observed, in each case in which exhaustion has been excused, the Court "concluded it would be futile to complete the administrative review process because the hearing officer had no power to correct the violation." *J.S.*, 386 F.3d at 113.  It is the plaintiffs' burden to prove the applicability of the exception. *Cave*, 514 F.3d at 249 (citing *Polera*, 288 F.3d at 488 n.8 and *Honig*, 484 U.S. at 327); *S.W. by J.W. v. Warren*, 528 F. Supp. 2d 282, 293 (S.D.N.Y. 2007) (citing *Murphy*, 297 F.3d at 199).

Plaintiffs contend that exhaustion is not required here as a result of DOE's "policies, practice, and procedures," which Plaintiffs identify as DOE's failure "to implement an expedited system to ensure that students denied a FAPE during remote learning are able to determine whether they are entitled to compensatory services, and what compensatory services they are entitled to receive." Complaint at ¶ 145.  This allegation, however, conflates the alleged violative policy underlying Plaintiffs' underlying claim – *i.e.*, DOE's alleged failure "to provide

services and programs consistent with these students' IEPs during remote learning" *id.* at ¶ 4 – with the relief Plaintiffs seek to address that violation -- *i.e.*, for DOE to implement an expedited, non-adversarial process by which it will assess the need for and provide compensatory services. In short, in an effort to avoid exhaustion Plaintiffs have pivoted from relying on a policy that allegedly resulted in widescale IDEA violations, to an alleged policy which, as Plaintiffs describe it, is simply the lack of the relief they seek here.

As noted above, exhaustion under the IDEA is excused where the challenged policy itself results in a denial of FAPE. The alleged lack of "an expedited system" to assess whether and to what extent compensatory services may be required is not a violation of law, however, anymore than a tortfeasor's lack of funds to immediately pay a judgment is itself a tort (which it is not). In fact, nowhere in the Complaint do Plaintiffs allege that the lack of such a system is itself a denial of FAPE. Nor could they. Rather, the only IDEA violation Plaintiffs allege is based on the lack of services provided in accordance with students' IEPs. That the lack of an "expedited system" does not support an IDEA violation here is particularly evident given that there already exist mechanisms to assess Plaintiffs' claims for compensatory education.

The determinations of whether DOE has failed to provide a student a FAPE, whether compensatory education is required to remedy such a failure and, if so, the nature and extent of such compensatory education to be provided, require the type of case-by-case inquiry for which the administrative process is best-suited and which lies at the heart of the IDEA's exhaustion requirement. As the Supreme Court has explained, "The IDEA's administrative procedures test whether the school has met [its] obligation[s] – and so center[s] on the Act's FAPE requirement." *Fry v. Napoleon Cmty. Sch.*, 137 S.Ct. 743, 754 (2017).

In contending that there is no mechanism to address these issues, Plaintiffs conveniently ignore numerous paragraphs in their own pleading in which they acknowledge mechanisms by which to address an alleged denial of FAPE and through which they may obtain compensatory education services – the impartial hearing process and CSE meetings. *See, e.g.*, ¶¶ 8, 97 (describing impartial hearing process), ¶ 54 (CSE meetings).

### 1.   <u>Impartial Hearings</u>

Courts rely on the administrative proceedings when addressing allegations of denial of FAPE and remedy.  Both the Supreme Court and the Second Circuit have consistently construed the IDEA to strictly limit judicial review of state administrative proceedings. *See, e.g.*, *Grim v. Rhinebeck Cent. Sch. Dist.*, 346 F.3d 377, 380-81 (2d Cir. 2003) (citing *Bd. of Educ. v. Rowley*, 458 U.S. 176, 204-08 (1982) and *Walczak v. Florida. Union Free Sch. Dist.*, 142 F.3d 119, 129 (2d Cir. 1998)). Federal courts "are expected to give due weight" to state administrative proceedings "mindful that the judiciary generally lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy." *M.S. v. Yonkers Bd. of Educ.*, 231 F.3d 96, 102 (2d Cir. 2000) (citations and internal quotations omitted); *R.E. v. New York City Dep't of Educ.*, 694 F.3d 167, 189 (2d Cir. 2012) (same). Federal courts thus should accord a high level of deference to determinations made by state administrators where those determinations require the special expertise of the administrative official in matters such as the substantive adequacy of an IEP or competing educational policy concerns. *See, e.g., Rowley*, 458 U.S. at 208; *M.H. & E.K. v. New York City Dep't of Educ.*, 685 F.3d 217, 244 (2d Cir. 2012); *T.P. v. Mamaroneck Union Free Sch. Dist.*, 554 F.3d 247 (2d Cir. 2009); *Cerra v. Pawling Cent. Sch. Dist.*, 427 F.3d 186 (2d Cir. 2005) ("We have not hesitated to vacate district court opinions where the district court erred in substituting its judgment for that of the agency experts and the hearing officer") (internal citations omitted).

Although masquerading under the guise of a "policy and practice" argument, Plaintiffs' exhaustion argument actually is grounded on their allegation that the administrative process is futile.   Thus, Plaintiffs allege, they need not proceed through the administrative process because they are challenging "the very need for, or sufficiency of, that process." Complaint at ¶ 148.   This argument is specious and entirely speculative, however, given that none of the named Plaintiffs invoked the available administrative process and filed a due process complaint at any time, even though their claims for compensatory services are alleged to have arisen as early as May 2020. *Id.*, at ¶ 106.[3]

Plaintiffs contend that this failure should be excused because the "current hearing process is unequipped to address the unique nature and sheer volume of claims for compensatory services" that may arise and that "thousands of claims for pandemic-related compensatory services, already long delayed, will only languish further if forced onto the clogged due process hearing." *Id.*, at ¶ 146. This self-serving and conclusory allegation is unavailing.

Indeed, this very argument was recently considered and rejected by Judge McMahon of this Court in *J.T. v. de Blasio*, 2020 U.S. Dist. LEXIS 212663 (S.D.N.Y. Nov. 13, 2020) (appeal pending), holding that "futility is not measured by the fact that it takes time to hold hearings."   *J.T.*, 2020 U.S. Dist. LEXIS 212663, * 130.   There, as here, "Plaintiffs conveniently do not allege that their impartial hearings have been held, let alone that no decision has been entered on a 'fully briefed' due process complaint."   *Id.* This is true because, despite the fact that schools were closed almost nine months before this action was filed, no Plaintiff filed a due process complaint.   As Judge McMahon noted, "this court is prepared to make allowances for the

---

[3]  Given Plaintiffs' inaction, their assertion that they are harmed by the lack of the requested relief -- rather than by their own delay in seeking relief through the available mechanism -- is specious and speculative.

-14-

fact that the pandemic will inevitably result in delays in the holding of impartial hearings. I am not prepared to divorce this lawsuit from the circumstances that precipitated it." *Id.*, 2020 U.S. Dist. LEXIS 21266, at 3* 131.   Thus, here, as in *J.T.*, "Plaintiffs have not come close to demonstrating futility." *Id.*

Plaintiffs' argument that the "sheer volume of claims" that may arise should excuse their failure to exhaust also was recently rejected by the federal court for the Central District of California when considering a claim on behalf of a class of students receiving special education throughout California alleging widespread violations of the IDEA and the Rehabilitation Act when California transitioned to remote learning as a result of the COVID-19 pandemic:

> Plaintiffs also argue that the administrative process is inadequate to provide relief to the 800,000 students with special needs who purportedly require IDEA remedies. However, "[a]dministrative remedies are not inadequate simply because a large class of plaintiffs is involved." *Hoeft v. Tucson Unified School Dist.,* 967 F.2d 1298, 1309 (9th Cir. 1992). Moreover, if "the named plaintiffs' cases are representative of the policies at issue in this case, individual administrative determinations would alert the state to local compliance problems and further correction of any problems on a state-local level." *Id.*

*Martinez v. Newsome*, 5:20-cv-01796, 2020 U.S. Dist. LEXIS 246396, *24-25 (Cent. Dist. Cal. Nov. 24, 2020) (appeal pending).

The California district court went on to observe "Plaintiffs have provided no authority for the proposition that time to adjudication is relevant to the adequacy of administrative procedures. Even if it were, the IDEA and California law set particular deadlines which do not exist in federal court. *Martinez*, 2020 U.S. Dist. LEXIS 246396, at *25. Similarly here, the IDEA, and federal and State regulations set out the timeframes that govern the administrative process in New York. *See* footnote 2, *supra*.

-15-

Plaintiffs' argument that their failure to exhaust should be excused because they are seeking relief that cannot be provided through the impartial hearing process – *i.e,*, the establishment of an expedited system to adjudicate their claims and direct an award of compensatory education – relies entirely on a self-serving creation of their own making.  As noted above, Plaintiffs allege that they have been deprived a FAPE.  Yet, as Defendants note above and Plaintiffs concede in their Complaint (at ¶¶ 5, 9, 47, 48, 97), such a violation may result in the award of compensatory education services which may be provided through the impartial hearing process.

Crucially, however, Plaintiffs cannot show that a violation of the IDEA entitles them to the creation of a shadow administrative process that is beyond that expressly set forth in the IDEA, Rehabilitation Act, NY Education Law and their implementing regulations.  It would be entirely unreasonable to excuse Plaintiffs' failure to exhaust when they are seeking relief that cannot be provided by the administrative process *because it is not even available under the laws under which they bring suit*.

In a further attempt to avoid the magnitude of their failure, Plaintiffs allege that

> the IDEA due process hearing process in New York City is not designed or able to address all of the needs for compensatory services due to remote learning. This process applies only to those students with disabilities whose parents filed requests for due process hearings, and are able to navigate the complicated legal process of the hearing itself. This is particularly difficult for families who cannot afford or do not have access to an attorney or advocate. Moreover, awarding compensatory services due to remote learning should not require the adversarial components of the IDEA administrative hearing process.

Complaint, ¶ 98.  Remarkably, Plaintiffs appear to argue that the impartial hearing process should not apply to them -- or, indeed, any parent -- because they did not file requests for due process hearings. In other words, Plaintiffs appear to contend that the current system for

-16-

addressing claims alleging a denial of FAPE and seeking compensatory education is insufficient because it requires the parents to follow the steps outlined in state and federal law.

Moreover, the IDEA and its implementing regulations do not excuse a failure to exhaust because a parent cannot "navigate the process," or cannot afford or does not have access to an attorney or advocate.  Such a claim is particularly specious in light of the IDEA's fee-shifting provision, found in 20 U.S.C. § 1415(i)(3)(B). Finally, Plaintiffs cite no law, let alone provide any support beyond their self-serving desire, that appropriate relief based on a denial of FAPE -- whether it is compensatory services or something else -- ought not to be subject to the impartial hearing process, particular given that compensatory education is not automatic, but available only for "gross violations of the IDEA."  *Somoza*, 538 F.3d at 109 n.2.

## 2.   CSE Meetings

While railing against the impartial hearing process, Plaintiffs ignore their own allegations describing the federal and State advice to local education agencies that issues concerning compensatory education for services not received during remote learning be addressed through CSE meetings:

- "Regarding compensatory services, the US DOE stated, 'If a child does not receive services during a closure, a child's IEP team (or appropriate personnel under Section 504) must make an individualized determination whether and to what extent compensatory services may be needed, consistent with the applicable requirements, including to make up for any skills that may have been lost.'" (Complaint, ¶ 39).

- "NY SED's guidance further stated, 'Documentation must be maintained on the instruction and services that were provided to each student so that these activities may be communicated to the Committee on Special Education or Committee on Preschool Special Education . . , for consideration when making an individualized determination as to whether and to what extent compensatory services may be needed when schools reopen.'" (Complaint, ¶ 50).

- NY SED's October 15, 2020 guidance also contemplated that compensatory services may be necessary if IEP services were missed due

to lack of transportation. This guidance explained that any failure to receive services due to transportation 'may be communicated to the CPSE [(Committee on Preschool Special Education)] or CSE [(Committee on Special Education) for consideration when making an individualized determination as to whether and to what extent compensatory services may be needed.'" (Complaint, ¶ 54).

Parents who believe that the school district is failing to implement an IEP or to provide their children with FAPE may request an IEP meeting at any time. As explained by the State Review Officer in SRO appeal 19-012 (at 11):

> State regulations additionally provide that, if parents believe that their child's placement is no longer appropriate, they "may refer the student to the [CSE] for review" (8 NYCRR 200.4[e][4]). In a guidance letter, the United States Department of Education indicated that it is the district's responsibility to determine when it is necessary to conduct a CSE meeting but that parents may request a CSE meeting at any time and, if the district determines not to grant the request, it must provide the parents with written notice of its refusal, "including an explanation of why the [district] has determined that conducting the meeting is not necessary to ensure the provision of FAPE to the student" (Letter to Anonymous, 112 LRP 52263 [OSEP Mar. 7, 2012]; see 34 CFR 300.503; 8 NYCRR 200.5[a]).

*See also* 34 CFR § 300.324(a)(4)(i) (authorizing parent and LEA to amend or modify child's IEP after annual IEP team meeting).

None of the Plaintiffs, however, has requested a CSE meeting to address the alleged loss of educational opportunities incurred by their children as the result of remote learning, or made any formal or informal request for compensatory education services. Nor have they made any allegations that would excuse their failure to do so.

\*     \*     \*

In determining whether plaintiffs should be subject to the exhaustion requirement, courts should "consider whether administrative review would further the goals of developing facts, making use of available expertise, and promoting efficiency." *J.S.*, 386 F.3d at 113 (citing

*Hoeft*, 967 F.2d at 1303).  Administrative review facilitates two laudable goals: namely, such review provides educational professionals the first opportunity to correct any deficiencies in a student's educational program, and also allows development of a record of the available facts for judicial review, thus promoting efficiency.  Indeed, complaints such as Plaintiffs -- which require an individual analysis of whether the students were denied FAPE and the nature and extent of any compensatory services to be provided -- are the very "textbook examples" of the types of issues the Second Circuit has found to require administrative exhaustion. *See Cave*, 514 F.3d at 246; *J.M. v. Kingston City Sch. Dist.*, 2015 U.S. Dist. LEXIS 157673, * 53-54 (N.D.N.Y. Nov. 23, 2015) (dismissing claim for compensatory education due to failure to exhaust).  Like the claims at issue in *JT*, Plaintiffs claims here are "nothing but a series of individual claims," each of which needs to be exhausted.  *J.T.*, 2020 U.S. Dist. LEXIS 212663, at * 109.

Despite the fact that schools were closed over eight months before this action was filed, no Plaintiff is alleged to have filed a due process complaint or requested a CSE meeting to review their child's IEP.  Plaintiffs should not be permitted to use their own inaction as a basis to excuse their failure to avail themselves of the administrative mechanisms already in place.

Plaintiffs' failure to exhaust their administrative remedies deprives this Court of subject matter jurisdiction.  Accordingly, DOE's motion should be granted and the Complaint as against it dismissed.

## **CONCLUSION**

For the reasons set forth above, DOE Defendants respectfully request that their motion be granted in its entirety and that the Complaint be dismissed as against them, and that they be awarded such other and further relief as this Court deems just and proper.

Dated:  New York, New York
  March 12, 2021

JAMES E. JOHNSON
Corporation Counsel of the
  City of New York
Attorney for DOE Defendants
100 Church Street, Room 2-121
New York, New York 10007
(212) 356-0876

By:  /s/ Jeffrey S. Dantowitz
  Jeffrey S. Dantowitz
  Assistant Corporation Counsel