Index No.  20-CV-9866 (ALC)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Z.Q., BY HIS PARENT, G.J. et al.,

Plaintiffs,

- against -

NEW YORK CITY DEPARTMENT OF EDUCATION,
et al.,

Defendants.

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO DISMISS THE COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(1)**

*JAMES E. JOHNSON*
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y.  10007*

*Of Counsel:  Jeffrey S. Dantowitz*
*Tel:  (212) 356-0876*
*Matter No. 2020-045871*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................... ii

ARGUMENT

      POINT I

           EXHAUSTION IS A JURISDICTIONAL
           REQUIREMENT ...................................................................................... 1

      POINT II

           PLAINTIFFS' FAILURE TO EXHAUST
           DEPRIVES THIS COURT OF SUBJECT
           MATTER JURISDICTION .................................................................... 2

           A. Plaintiffs' Allegations of Systemic Violations
              Do Not Excuse Their Failure to Exhaust .......................................... 2

           B. Plaintiffs Cannot Evade The IDEA's
              Exhaustion Requirements By Seeking Relief
              That Is Not Available Under the IDEA ............................................ 5

           C. Plaintiffs' EEOA Claim Is Subject to
              Exhaustion......................................................................................... 9

CONCLUSION............................................................................................................... 10

# TABLE OF AUTHORITIES

<u>Cases</u>                                                                                              <u>Pages</u>

*BD v. DeBuono*,
   130 F. Supp. 2d 401 (S.D.N.Y. 2001)......................................................................................... 6, 7

*Charlie F. v. Board of Educ. of Skokie School Dist.*,
   98 F.3d 98 (7th Cir. 1996) .......................................................................................................... 8

*Coleman v. Newburgh Enlarged City Sch. Dist.*,
   503 F.3d 198 (2d Cir. 2007)........................................................................................................ 2

*Collins v. City of New York*,
   156 F. Supp. 3d 448 (S.D.N.Y. 2016)....................................................................................... 10

*F.C. v. N.Y.C. Dep't of Educ.*,
   2016 U.S. Dist. LEXIS 103476, 2016 WL 8716232 (S.D.N.Y. Aug. 5, 2016)......................... 3

*Frazier v. Fairhaven Sch. Comm.*,
   122 F. Supp. 2d 104 (D. Mass.2000) ......................................................................................... 7

*Heldman v. Sobol*,
   962 F.2d 148 (2d Cir. 1992)........................................................................................................ 3

*Hoeft v. Tucson Unified Sch. Dist.*,
   967 F.2d 1298 (9th Cir. 1992)..................................................................................................... 9

*Hope v. Cortines*,
   872 F. Supp. 14 (E.D.N.Y. 1995) ........................................................................................... 7, 9

*J.G. v. Bd. of Educ. of the Rochester City Sch. Dist.*,
   830 F.2d 444 (2d Cir. 1987)........................................................................................................ 3

*J.S. v. Attica Cent. Sch.*,
   386 F.3d 107 (2d Cir. 2014).................................................................................................... 3, 5

*J.T. v. de Blasio*,
   20 Civ. 5878, 2020 WL 6748484 (S.D.N.Y. Nov. 13, 2020) ............................................... 5, 10

*Jose P. v. Ambach*,
   669 F.2d 865 (2d Cir. 1982)........................................................................................................ 3

*LeBlanc v. Cleveland*,
   198 F.3d 353 (2d Cir. 1999)........................................................................................................ 1

*M.A. v. New York City Dep't of Educ.*,
   1 F. Supp. 3d 125, 130, 2014 WL 775091
   (S.D.N.Y. Feb. 25, 2014)......................................................................................................... 8, 9

**Cases** **Pages**

*M.G. v. N.Y. City Dep't of Educ.*,
15 F. Supp. 3d 296 (S.D.N.Y. 2014)........................................................................................... 3

*Makarova v. United States*,
201 F.3d 110 (2d Cir. 2000)...................................................................................................... 1

*Mrs. W. v. Tirozzi*,
832 F.2d 748 (2d Cir. 1987)...................................................................................................... 3

*Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist.*,
288 F.3d 478 (2d Cir. 2002)....................................................................................... 6, 7, 8, 9, 10

*Reyes v. Bedford Cent. Sch. Dist.*,
No. 16-CV-2768, 2017 WL 4326115 (S.D.N.Y. Sept. 27, 2017).............................................. 4

*S.W. v. Warren*,
528 F. Supp. 2d 282 (S.D.N.Y. 2007)........................................................................................ 4

*Scaggs v. New York State Dep't of Educ.*,
No 06-CV-0799, 2007 WL 1456221 (E.D.N.Y. May 16, 2007) ............................................... 4

*Stropkay v. Garden City Union Free Sch. Dist.*,
593 Fed. Appx. 37 (2d Cir. 2014)............................................................................................. 7

*Taylor v. Vt. Dep't of Educ.*,
313 F.3d 768 (2d Cir. 2002)...................................................................................................... 6

*Ventura dePaulino v. N.Y.C. Dep't of Educ.*,
959 F.3d 519 (2d Cir. 2020)...................................................................................................... 2

**Statutes**

20 U.S.C. § 1415(f)(E)(1) .........................................................................................................9

20 U.S.C. § 1415(l) ................................................................................................................... 9

20 U.S.C. § 1703.................................................................................................................... 10

DOE respectfully submit this reply memorandum of law in further support of their motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(1).[1]

In their opposition brief ("Opp. Br." ECF No. 45), Plaintiffs argue that they were not required to exhaust their administrative remedies because they complain of systemic issues and because they seek relief that cannot be provided through the administrative process. As discussed more fully below, while Plaintiffs' arguments pay lip service to two grounds to excuse exhaustion, the substance of their claims fails to provide support. Not only would the requested relief not correct the alleged violations, but it also is entirely unavailable under the IDEA and thus, cannot be used to circumvent the exhaustion requirements.

## ARGUMENT

### POINT I

### EXHAUSTION IS A JURIDICTIONAL REQUIREMENT

In footnote 11 of their Opposition Brief, Plaintiffs argue that a recent decision from the Second Circuit "cast[s] doubt" on whether IDEA exhaustion is a jurisdictional requirement or a claims-processing rule.[2] Despite this supposed doubt, what is clear is that until

---

[1] Defendants New York City Department of Education, New York City Board of Education and Richard Carranza (collectively, "DOE").

[2] Plaintiffs improperly seek to have this Court consider new facts in support of their opposition. However, in deciding a motion under FRCP 12(b)(1), a court may not refer to evidence outside the pleadings, except when "jurisdictional facts are placed in dispute." *LeBlanc v. Cleveland*, 198 F.3d 353, 356 (2d Cir. 1999). Even in the case cited by Plaintiffs, *Makarova v. United States*, 201 F.3d 110 (2d Cir. 2000), it is clear that the Court considered new information to resolve a factual dispute concerning the plaintiff's employment. No jurisdictional facts are in dispute here, however. Nor could there be, as DOE's motion is wholly based on a purely procedural question arising from the undisputed fact that Plaintiffs failed to exhaust their administrative remedies.

Even if the Court were to consider statements made by State and DOE officials (Opp. Br. at ECF pgs. 17-19), these have no bearing whatsoever on the jurisdictional issue before the Court. Moreover, DOE's developing plan to address students' needs for compensatory education shows that Plaintiffs' action is unnecessary.

the Second Circuit holds otherwise, the rule in this Circuit is that exhaustion is not merely a claims-processing rule and Plaintiffs' failure to exhaust deprives this Court of subject matter jurisdiction. In any event, Plaintiffs fail to argue that this issue has any consequence here, as they acknowledge that even if it is a claims-processing rule, exhaustion remains "mandatory." *Ventura dePaulino v. N.Y.C. Dep't of Educ.*, 959 F.3d 519, 530 n. 44 (2d Cir. 2020). Moreover, as the Second Circuit has explained, the only distinction is whether the argument regarding failure to exhaust is subject to waiver and forfeiture, neither of which is applicable here. *See Coleman v. Newburgh Enlarged City Sch. Dist.*, 503 F.3d 198, 203 (2d Cir. 2007).

**POINT II**

**PLAINTIFFS' FAILURE TO EXHAUST DEPRIVES THIS COURT OF SUBJECT MATTER JURISDICTIONS**

The facts underlying DOE's motion are not in dispute, as Plaintiffs readily concede that they did not exhaust their administrative remedies prior to commencing this action. Though such failure ordinarily would deprive this Court of subject matter jurisdiction, Plaintiffs argue that this failure should be excused because (i) their Complaint contains allegations of systemic violations and (ii) the current administrative process cannot redress those violations. As discussed, below, each of these arguments is easily overcome, as they are based on a misunderstanding of the applicable principles.

**A.    Plaintiffs' Allegations of Systemic Violations Do Not Excuse Their Failure to Exhaust**

Plaintiffs argue that the mere fact that they have alleged systemic violations is sufficient to excuse their failure to exhaust. This is not so. Rather, the relevant factor is not simply whether a plaintiff alleges systemic issues, but that the relief required to redress those issues could not be remedied by the administrative process, making resort to that process futile.

2

The cases make clear that the nexus between the alleged systemic violation and the desired remedy is key to the futility determination. Thus, exhaustion of administrative remedies is futile "in cases involving systemic violations that could not be remedied by local or state administrative agencies." *F.C. v. N.Y.C. Dep't of Educ.*, 2016 U.S. Dist. LEXIS 103476, 2016 WL 8716232, at *6 (S.D.N.Y. Aug. 5, 2016). Indeed, in each case cited by Plaintiffs, the court found resort to the administrative process futile because it could not correct the violation being asserted.

As explained in *J.S. v. Attica Cent. Sch.*, 386 F.3d 107 (2d Cir. 2014), on which Plaintiffs heavily rely:

> The district court correctly observed that this Court has previously excused exhaustion of administrative remedies in cases that included allegations of systemic violations. *Heldman v. Sobol*, 962 F.2d 148 (2d Cir. 1992); *Mrs. W. v. Tirozzi*, 832 F.2d 748 (2d Cir. 1987); *J.G. v. Bd. of Educ. of the Rochester City Sch. Dist.*, 830 F.2d 444 (2d Cir. 1987); *Jose P. v. Ambach*, 669 F.2d 865 (2d Cir. 1982). In each of these cases, this Court concluded it would be futile to complete the administrative review process because the hearing officer had **no power to correct the violation**.

*J.S.*, 386 F.3d at 113 (emphasis added). *See M.G. v. N.Y. City Dep't of Educ.*, 15 F. Supp. 3d 296, 305 (S.D.N.Y. 2014) (finding exhaustion would be futile because "plaintiffs have plausibly alleged violations that the administrative process has 'no power to correct'").

Similarly, in *S.W. v. Warren*, 528 F. Supp. 2d 282 (S.D.N.Y. 2007), the court explained, "Because plaintiffs' complaints are caused by the policies of the County, a hearing officer could not offer a remedy, and therefore it would be futile for them to exhaust their administrative remedies." The court elaborated that exhaustion was futile because "the hearing officer could not remedy the system policy limiting service providers and hours of ABA therapy, and therefore could not provide them with relief **for the alleged systemic violations**." *Id.*, 528 F. Supp. at 295-96 (emphasis added).

In order to decide if a claim falls within the futility exception, "courts consider the distinction between 'the problem of inadequate educational programs and facilities, which constitute systemic violations to be addressed by the federal courts,' and 'technical questions of how to define and treat individual students' learning disabilities, which are best addressed by administrators." *Reyes v. Bedford Cent. Sch. Dist.*, No. 16-CV-2768, 2017 WL 4326115, * 9 (S.D.N.Y. Sept. 27, 2017) (quoting *Scaggs v. New York State Dep't of Educ.*, No 06-CV-0799, 2007 WL 1456221, at *7 (E.D.N.Y. May 16, 2007)).

In the case at bar, Plaintiffs allege DOE policies and practices resulted in large-scale denials of FAPE. Yet, as a remedy they seek to have DOE implement an expedited, non-adversarial process by which it will assess the need for and provide compensatory services. Thus, in stark contrast to the cases finding futility based on allegations of systemic violations, Plaintiffs do not seek a remedy designed to correct the asserted violations. Rather, Plaintiffs seek relief that will address the *effects* of those violations. As DOE pointed out in its moving brief, however, "nowhere in the Complaint do Plaintiffs allege that the lack of [the requested expedited, non-adversarial process] is itself a denial of FAPE. Nor could they." Moving Br. (NYSCEF No. 38) at ECF page 19.

Plaintiffs' assertion that they "do not seek individualized inquiries into the sufficiency of any one IEP" is disingenuous. (Opp. Br. at 23). In truth, though masquerading as a systemic claim, Plaintiffs' action does not seek to remedy any systemic or structural deficiencies, but is rather designed specifically and for no reason other than to allow parents to circumvent the exhaustion requirements of the IDEA. At heart, though, Plaintiffs ultimately seek compensatory services, making this one of the very "'textbook' cases presenting issues involving

4

individual children where the remedy is best left to educational experts operating within the framework of the local and state review procedures." *J.S.*, 386 F.3d at 114.

Plaintiffs casually attempt to distinguish *J.T. v. de Blasio, 20 Civ. 5878,* 2020 WL 6748484 (S.D.N.Y. Nov. 13, 2020) by arguing that unlike plaintiffs in that case, they are not arguing that remote learning "in and of itself" is a denial of FAPE. Opp. Br. ECF pages 24-25. *J.T.*, however, cannot be so easily dismissed. Indeed, there can be no greater assertion of a systemic violation than that made by the *J.T.* plaintiffs – that all students receiving special education at a DOE school were denied FAPE when the DOE closed its school building and began providing educational instruction through remote learning. Yet Judge McMahon saw plaintiffs' case for what it was -- "nothing but a series of individual claims," each of which needs to be exhausted. *J.T.,* 2020 U.S. Dist. LEXIS 212663, at * 109. The same is no less true here, where Plaintiffs allege that "During the pandemic, Defendants have failed to provide services and programs consistent with these students' IEPs during remote learning." Complaint, at ¶ 4. *See* Opp. Br. at ECF page 14 (asserting that "each Plaintiff—like thousands of other City students with disabilities—suffered educational harm and was denied a FAPE during remote learning . . . .") And, like the plaintiffs in *J.T.*, "Plaintiffs have not come close to demonstrating futility." *Id.*, 2020 U.S. Dist. LEXIS 21266, at * 131.

## B. Plaintiffs Cannot Evade The IDEA's Exhaustion Requirements By Seeking Relief That Is Not Available Under the IDEA

Plaintiffs also argue that they should be excused from the exhaustion requirement because "the administrative hearing process is institutionally incapable of providing the requested relief." (Opp. Br. at ECF page 20). While cleverly phrased, this argument is oversimplified and entirely misconstrues the substance of this exception.

Although courts may excuse exhaustion when the requested relief is not available through the administrative process, this argument is not without its limits. As DOE argued in its moving brief (ECF No. 38, at ECF page 23):

> Crucially, however, Plaintiffs cannot show that a violation of the IDEA entitles them to the creation of a shadow administrative process that is beyond that expressly set forth in the IDEA, Rehabilitation Act, NY Education Law and their implementing regulations. It would be entirely unreasonable to excuse Plaintiffs' failure to exhaust when they are seeking relief that cannot be provided by the administrative process *because it is not even available under the laws under which they bring suit*.

It is not surprising that Plaintiffs do not address this argument, as courts do not hesitate to reject futility claims based on the remedial limitations of the administrative process where the desired relief is not available under the IDEA. For example, monetary damages are not available under the IDEA. *Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist.*, 288 F.3d 478, 486 (2d Cir. 2002). Nonetheless, requests for monetary damages will not relieve plaintiffs of their obligation to exhaust. *See Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 789 (2d Cir. 2002) ("A plaintiff cannot evade the IDEA's exhaustion requirement simply by framing his or her action as one for monetary relief").

*In BD v. DeBuono*, 130 F. Supp. 2d 401 (S.D.N.Y. 2001), plaintiffs sought damages due to Westchester County's alleged failure to provide appropriate early intervention services to plaintiff children. In addressing plaintiffs' exhaustion argument, the court (Judge McMahon) noted that the "majority of courts facing this complex issue have rejected plaintiffs' argument, holding that a plaintiff seeking money damages . . . is required to exhaust under IDEA, even if money damages are not available under IDEA or through the administrative process." *Id.*, 130 F. Supp. 2d at 427. The court's reasoning is instructive:

> I agree with the courts that hold that plaintiffs should not be allowed to avoid the administrative requirements of IDEA by

> claiming only monetary damages or other relief not available under
> IDEA. To hold otherwise would be to allow the futility exception
> to swallow the rule. It was clearly Congress' intent to prevent an
> end-run around IDEA . . . .

*Id.*, 130 F. Supp. 2d at 428 (internal quotation and citation omitted).  Thus, a plaintiff "cannot

escape IDEA's exhaustion requirement by drafting a complaint artfully avoiding an IDEA claim

where IDEA offers plaintiffs the very relief they seek.*" Hope v. Cortines*, 872 F. Supp. 14, 17

(E.D.N.Y. 1995). *See Stropkay v. Garden City Union Free Sch. Dist.*, 593 Fed. Appx. 37, 40 (2d

Cir. 2014) ("plaintiffs' request for damages, a form of relief not available under the IDEA, does

not enable them to bypass the IDEA's administrative exhaustion rule.") (internal quotations

marks and citations omitted); *Polera*, 288 F.3d at 488 ("The fact that Polera seeks damages, in

addition to relief that is available under the IDEA, does not enable her to sidestep the exhaustion

requirements of the IDEA"). To allow otherwise would eviscerate the exhaustion requirement

and permit plaintiffs to avoid the administrative process simply by requesting relief, even relief

not authorized by the IDEA and no matter how unreasonable, that administrative authorities

could not grant.   *See Frazier v. Fairhaven Sch. Comm.*, 122 F. Supp. 2d 104, 109 (D.

Mass.2000), *cited in BD*, 130 F. Supp. 2d at 428, and cases cited therein.

At best, Plaintiffs' position relies entirely on the unsustainable tautology that they

should be excused from exhausting their administrative remedies because they are seeking relief

that would excuse them from exhausting their administrative remedies.   While "the

administrative hearing process is institutionally incapable of providing the requested relief,"

(Opp. Br. at ECF page 20), this is because such relief is not available under -- and, indeed, is

utterly inconsistent with -- the IDEA.

As the Second Circuit has explained, "the relevant inquiry in determining whether

a plaintiff was required to exhaust a claim under the IDEA is not the particular cause of action

asserted or the remedy sought by the plaintiff, but rather the '[t]he theory behind the grievance.'"

*Polera*, 288 F.3d at 488 (quotation omitted), *quoted in M.A. v. New York City Dep't of Educ.*, 1

F. Supp. 3d 125, 130, 2014 WL 775091, * 2 (S.D.N.Y. Feb. 25, 2014). That is, "[i]f the conduct

or conditions a plaintiff complains of are the type that the IDEA was intended to remedy – that

is, related to the educational program and accommodations of a disabled child -- administrative

remedies must be exhausted prior to filing suit in court." *M.A. v. New York City Dep't of Educ.*, 1

F. Supp. 3d 125, 143, 2013 U.S. Dist. LEXIS 185534, * 30 (S.D.N.Y. Sept. 5, 2013).[3]  As the

Seventh Circuit has explained:

> The statute speaks of available relief, and what relief is "available"
> does not necessarily depend on what the aggrieved party wants.
> Certainly not in litigation. . . . If this principle is equally applicable
> for purposes of § 1415(f), then the theory behind the grievance
> may activate the IDEA's process, even if the plaintiff wants a form
> of relief that the IDEA does not supply.

*Charlie F. v. Board of Educ. of Skokie School Dist.*, 98 F.3d 98, 991-92 (7th Cir. 1996), *cited with

approval in Polera*, 288 F.3d at 488.

Here, the gravamen of Plaintiffs' Complaint is the allegation that for each student-

Plaintiff, DOE "failed to provide [student- Plaintiff] with a FAPE because it has failed to provide

services in accordance with [student-infant Plaintiff's] IEP during remote learning or provide the

necessary tools to access services. As a result, [infant Plaintiff] has suffered substantial

educational harm . . . ." *See* Complaint at ¶¶ 108, 113, 118, 123, 128, 133, 137 and 144.

Though alleging systemic failures, Plaintiffs clearly are more concerned with

obtaining relief, in the form of compensatory education, to redress the individualized educational

deprivations for each of the infant-Plaintiffs.  Plaintiffs' allegations concerning DOE's alleged

failures vis-a-vis each named infant-Plaintiff raise precisely the type of conduct or conditions

---

[3] The Westlaw citation is not available for this case.

8

"related to an educational program and accommodation of a disabled child" for which exhaustion is required and the administrative process best suited. *M.A.*, 1 F. Supp.3d at 143, 2013 U.S. Dist. LEXIS 185534, at * 30. These are the very types of individualized assessments for which the administrative process is best suited. *See Polera*, 288 F.3d at 488 ("The IDEA is intended to remedy precisely the sort of claim made by Polera: that a school district failed to provide her with appropriate educational services."); *Hope*, 872 F. Supp. at 22 ("[A]ny challenge to the educational services and accommodations provided to [plaintiff] would seem to fall squarely and more properly within the expertise of education professionals than in federal court."). *See also Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298, 1303 (9th Cir. 1992) ("Exhaustion of the administrative process allows for the exercise of discretion and educational expertise by state and local agencies, affords full exploration of technical educational issues, furthers development of a complete factual record, and promotes judicial efficiency by giving these agencies the first opportunity to correct shortcomings in their educational programs for disabled children"), *quoted in Polera*, 288 F.3d at 488.

## C.   Plaintiffs' EEOA Claim Is Subject to Exhaustion

Plaintiffs now contend that their EEOA claim – based on a failure to receive material in appropriate languages -- is not based on a denial of FAPE and, therefore, is not subject to the exhaustion requirement. Opp. Br. at ECF page 20 n. 10. This argument, however, is easily rejected. As the relevant provision of the IDEA states, exhaustion is required for *all* "Federal laws protecting the rights of children with disabilities . . . seeking relief that is also available" under the IDEA. 20 U.S.C. § 1415(l).[4]

---

[4] Plaintiffs' assertion that hearing officers do not have jurisdiction to determine EEOA violations is not supported by their citation to 20 U.S.C. § 1415(f)(E)(1). Nor does such assertion, even if true, excuse their failure to exhaust, as hearing officers also do not have authority to decide claims brought under statutes such as 42 U.S.C. § 1983 or the Americans With Disabilities Act,

Moreover, Plaintiffs' contention that their EEOA claim is not based on a denial of FAPE is wholly belied by the allegations in the Complaint, in which Plaintiffs allege "During remote learning, students with disabilities were not provided instruction materials in their primary languages. Many students with disabilities who are also English Language Learners or Multilingual Learners were not provided an interpreter or translated materials, in violation of their IEPs." Complaint at ¶ 74. The substance of this claim clearly concerns an alleged denial of FAPE. And, while Plaintiffs may seek to re-characterize their claims as being brought on behalf of the parents-Plaintiffs, this, too, is contradicted by the Complaint, which expressly alleges injury to the students-Plaintiffs and is brought by them, not the parents. *See, e.g.*, Complaint at ¶ 75 ("With DOE guidance posted and distributed in English only, students who needed adult assistance to access remote learning were deprived of education services when their parents could not understand the instructions") and ¶ 202 ("Z.Q. and J.A., by and through their parents G.J. and D.S., respectively, and members of Subclass I were unable to access remote learning because the materials, instructions for access, and communications regarding remote learning and services from Defendants were not translated"). Nor would such a claim by the parents be viable, as the EEOA provides a cause of action only "for individuals who have been denied an equal education opportunity." *Collins v. City of New York*, 156 F. Supp. 3d 448, 456 (S.D.N.Y. 2016) (citing 20 U.S.C. § 1703).

## CONCLUSION

For the reasons set forth above and in their papers previously submitted, DOE Defendants respectfully request that their motion be granted in its entirety and that the Complaint

---

yet these claims require exhaustion where they seek relief that is available under the IDEA. *See Polera.,* 288 F.3d 478 (2d Cir. 2002) (plaintiff required to exhaust ADA claim); *J.T.*, 2020 WL 6748484, \*42 (exhaustion required for  claims under § 1983 and ADA).

10

be dismissed as against them, and that they be awarded such other and further relief as this Court

deems just and proper.

Dated:     New York, New York
             April 30, 2021

                           JAMES E. JOHNSON
                           Corporation Counsel of the
                            City of New York
                           Attorney for DOE Defendants
                           100 Church Street, Room 2-121
                           New York, New York 10007
                           (212) 356-0876

                  By:

                         Jeffrey S. Dantowitz
                         Assistant Corporation Counsel