USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED:  March 28, 2022

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------- x
                           :
**Z.Q., et al.,**                           :
                           :
                  **Plaintiffs,**       :          **1:20-CV-9866-ALC**
                           :
          **-against-**                :         **<u>Memorandum and Order</u>**
                           :
**New York City Dep't of Education, et al.,**     :
                           :
                 **Defendants.**      :
                           :
------------------------------------------------------------------- x

**ANDREW L. CARTER, JR., United States District Judge:**

       This action is about the delay in the provision of compensatory education services for students with disabilities in New York City following the COVID-19 outbreak. On November 23, 2020, several children with eligible disabilities and their respective parents and natural guardians ("Plaintiffs") commenced this putative class action against State and City Defendants[1] under the Individuals with Disabilities Education Act (the "IDEA"), 20 U.S.C. § 1400, *et seq.*; 42 U.S.C. § 1983; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504"); Equal Educational Opportunities Act of 1974, 20 U.S.C. §§ 1703, 1706; and New York State Education Law § 4002, *et seq.* (the "N.Y. Educ. Law § 4002") and the regulations promulgated thereunder, alleging that Defendants have failed to meet their legal obligations to

---

[1] "State Defendants" refers to Defendants New York State Education Department (NYSED), New York State Board of Regents, and Betty A. Rosa (Interim Commissioner of Education for the State of New York). "City Defendants" refers to Defendants the New York City Department of Education (NYDOE), Richard Carranza (Chancellor of NYDOE) and the New York City Board of Education. Individual defendants are sued in their official capacities.

implement students' Individualized Education Programs ("IEPs") during periods of remote learning.

Before the Court are both City and State Defendants' separate motions to dismiss under Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Because Plaintiffs have failed to exhaust administrative remedies, Defendants' motions to dismiss are **GRANTED**.[2]

## I.   LEGAL AND REGULATORY FRAMEWORK UNDER THE INDIVIDUALS WITH DISABILITIES EDUCATION ACT (IDEA)

An important policy purpose of the Individuals with Disabilities Education Act (IDEA) is to ensure that children with disabilities have "a free appropriate public education ["FAPE"] that emphasizes special education and related services designed to meet their unique needs" and "that the rights of children with disabilities and parents of such children are protected." 20 U.S.C. § 1400(d)(1)(A)-(B). States receive federal financial assistance under the IDEA for making a FAPE available to children with disabilities. *See* 20 U.S.C. § 1412(a). "The centerpiece of the IDEA's education delivery system is the individualized education program, or IEP." *Lillbask ex rel. Mauclaire v. Conn. Dep't of Educ.*, 397 F.3d 77, 81 (2d Cir. 2005) (internal quotation marks and citations omitted). An IEP is "a written statement for each child with a disability that is developed, reviewed, and revised" that shall go into effect no later than the beginning of each academic school year. 20 U.S.C. §§ 1414(d)(1)(A), 1414(d)(2)(A). The IEP must "be reasonably calculated to enable the child to achieve educational benefits." *T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist.*, 752 F.3d 145, 151 (2d Cir. 2014) (internal quotation marks omitted).

---

[2] Because Plaintiffs failed to exhaust their denial-of-FAPE claims, this Court lacks subject matter jurisdiction over this case. The Court need not reach other arguments in Defendants' moving briefs.

The State of New York tasks local Committees on Special Education ("CSEs") with formulating IEPs. 20 U.S.C. § 1414(d)(1)(A)-(B); N.Y. Educ. Law § 4402(1)(b)(1). CSEs consist of one or more of the student's parents, a special education teacher or special education provider of the student, a school psychologist, a school district representative "qualified to provide or administer or supervise special education and . . . knowledgeable about the general curriculum and the availability of resources of the school district," someone "who can interpret the instructional implications of evaluation results," and others. N.Y. Educ. Law § 4402(l)(b)(l)(a). The IEP must be reviewed and prepared on an annual basis. *See* 20 U.S.C. § 1414(d)(4); *see also Hardison v. Board of Education*, 773 F.3d 372, 376 (2d Cir. 2014).

If a parent is unsatisfied with an IEP, they may unilaterally enroll the child in a private school and seek tuition reimbursement from the school district by filing a due process complaint. *Hardison*, 773 F.3d at 376 (internal quotation marks omitted); 20 U.S.C. § 1415(b)(6), § 1415(k) (stipulating that an aggrieved party may bring a complaint to initiate administrative proceedings). The impartial hearing officer ("IHO") will preside over the due process hearing. *See* 20 U.S.C. § 1415(f). Upon decision by the IHO, if a parent remains aggrieved, they may appeal to a State Review Officer ("SRO"). *See* 20 U.S.C. § 1415(f)-(g); *see also* N.Y. Educ. Law § 4404(2). Once this administrative regime is exhausted, parents are permitted to seek reversal or modification of the final determination of the SRO in state court or federal district court. *See* 20 U.S.C. § 1415(i)(2)(A).

One form of equitable relief available to aggrieved parties is compensatory education services, which requires a local school district "to fund education beyond the expiration of a child's eligibility as a remedy for any earlier deprivations in the child's education." *Somoza v.*

*New York City Dep't of Educ.*, 538 F.3d 106, 109 n.2 (2d Cir. 2008) (citing *Burr v. Sobol*, 888

F.2d 258 (2d Cir. 1989), *aff'g prior holding in Burr v. Ambach*, 863 F.2d 1071 (2d Cir. 1988)).

## II.    FACTUAL BACKGROUND

**A. June 20, 2020 Supplement #2, Provision of Services to Students with Disabilities During Statewide School Closures Due to Novel Coronavirus (Covid-19) Outbreak in New York State – Questions and Answers**[3]

Due to school closures in New York City following the outbreak of COVID-19, the New

York State Education Department Office of Special Education ("OSE") issued guidance[4]

recognizing that CSEs would need to "consider newly identified needs when determining the

appropriate special programs and services to be recommended for the 2020-2021 school year,"

and that recommendations for children with disabilities may include a range of remedies,

including compensatory services. *See* Office of Special Education June 20, 2020 Supplemental

Guidance at 1-2. The guidance offered examples of compensatory services that could be offered

to students, including "extending the school day, providing tutoring before and after school, or

providing additional services during regular school hours." *Id.* at 5. The supplemental guidance

also stated that a student may receive compensatory services after they turn 21 or have earned a

high school diploma because such services constituted a remedy "for the past denial of

educational and related services that were not originally provided." *Id*. Finally, the guidance

reminded parents that if they were unsatisfied with a decision regarding compensatory services,

---

[3] On a motion to dismiss, courts may consider "documents incorporated into the complaint by reference and matters of which a court may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). The Court takes judicial notice of this guidance document, which is located at:
https://www.p12.nysed.gov/specialed/publications/2020-memos/special-education-supplement-2-covid-qa-memo-6-20-2020.pdf.
[4] OSE issued earlier guidance on the provision of compensatory services in the midst of COVID-19 on March 27, 2020 and April 27, 2020. Compl ¶¶ 44, 47-50.

they may directly file a complaint with the NYSED, request mediation, or file a due process complaint and proceed to an impartial hearing. *Id.* at 6.

## B. June 2021 – Compensatory Services for Students with Disabilities as a Result of the COVID-19 Pandemic[5]

In light of the "delay or disruption in the provision of special education programs and services," the OSE issued additional guidance reminding CSEs "of their responsibility to make an individualized determination as to whether and to what extent compensatory services may be needed for a student with a disability to make up for any skills that may have been lost when FAPE could not be provided." ECF No. 66-1 at 2. It also advised, as had been done in earlier COVID-19 guidance, that CSEs consider several questions in making an individualized determination about whether, and to what extent, compensatory services may be needed:

- How long was the school closed and/or not providing full in-person learning?
- Was the student provided instruction or services in a learning modality/modalities other than full in-person learning (e.g., remote synchronous and/or asynchronous instruction and/or related services? To what extent?
- What documentation is there to demonstrate that the student benefited from the learning modality/modalities described above? Was the student engaged and able to access the instruction and services?
- Is there documentation of the amount of instruction and services the student was provided during the learning modality/modalities described above (including dates, times, and duration)? If so, what amount of instruction and services did the student receive?
- Have there been changes in the student's educational progress and achievement, including progress toward meeting IEP goals, and ability to participate in the general education curriculum? What are those changes?
- Are there indications that the student regressed during the time the student was not receiving full in-person learning?
- Is there a possibility that the student will require extended school year services due to regression?

---

[5] The June 2021 guidance contained substantially similar information as the prior June 20, 2020 guidance.

- Did any new needs develop for the student (e.g., emotional, medical, behavioral, academic) such that the student should be provided with additional special education or related services?

. . . .

This list is not exhaustive. Each student's circumstances will differ and the determination of compensatory services must be made on a student-specific individual basis.

ECF No. 66-1 at 8-9.

Since the onset of the COVID-19 crisis, Plaintiffs allege that Defendants have failed to provide services and programs that are consistent with students' IEPs, especially during periods of remote learning. Compl. ¶¶ 3-4, 55, 58-65. In addition, they plead that Defendants have failed to provide technology, translation, and interpretation services to families of students in need of remote learning resources. Compl. ¶¶ 4, 56, 66-75. When in-person learning opportunities resumed, Plaintiffs plead, Defendants failed to provide the in-person component of students' IEPs. Compl. ¶¶ 4, 76-80.

According to Plaintiffs, Defendants have not offered an alternative plan, aside from the traditional mechanism of the impartial hearing system, for processing or delivering compensatory services owed to affected students with disabilities. Compl. ¶¶ 5-7, 95. Plaintiffs seek "the creation and implementation of a specific process and plan to remedy the denials of Plaintiffs' and Class members' rights, which will promptly afford these students the education to which they are legally entitled—before they fall any further behind." Compl. ¶¶ 13, 95-101. They allege that such a plan would be an expedited alternative to seeking compensatory services through the current impartial hearing process. *Id.*

### III.    PROCEDURAL HISTORY

Plaintiffs commenced this action on November 23, 2020. ECF No. 1. On March 12, 2021, State and City Defendants separately moved to dismiss. ECF Nos. 35-36, 37-38. Plaintiffs filed a single opposition to both motions on April 9, 2021. ECF Nos. 45-46.[6] City Defendants filed their reply on April 30, 2021. ECF No. 61. State Defendants replied on May 12, 2021. ECF No. 65. State Defendants and Plaintiffs submitted supplemental letters regarding the pending motions to dismiss that included additional exhibits that this Court considers in its ruling. ECF Nos. 66, 68, 70. However, the Court declines to consider any arguments raised in those letters because neither of the parties requested leave of court to file a sur-reply in connection with the motion to dismiss briefing.

## IV.    STANDARD OF REVIEW

### A. Rule 12(b)(1)

When considering a motion to dismiss for lack of subject matter jurisdiction under Fed R. Civ. P. 12(b)(1), "the district court must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (citing *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011) (per curiam)). Where jurisdictional facts are at issue, "'the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits.'" *Id.* (citing *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003)). But "the party asserting subject matter jurisdiction 'has the burden of proving by a preponderance of the evidence that it exists.'" *Id.* (citing *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).

---

[6] On the same day, Plaintiffs voluntarily dismissed the third and fifth causes of action against State Defendants only. ECF No. 43, 60.

**B. Rule 12(b)(6)**

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully," and accordingly, where the plaintiff alleges facts that are "'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

## V.   DISCUSSION

**A.  Plaintiffs Failed to Exhaust Administrative Remedies**

None of the plaintiffs here allege that they have exhausted administrative remedies under the IDEA. None have even filed a due process complaint, requested an impartial hearing, or sought out any of the relief provided for in the COVID-19 guidance from the OSE regarding compensatory services. Instead, Plaintiffs contend that exhaustion is not required for two reasons: (1) they allege systemic violations about Defendants' implementation of IEPs during the pandemic, and (2) the current hearing system cannot adequately redress these systemic failures. Defendants argue that this Court lacks subject matter jurisdiction under Rule 12(b)(1) due to Plaintiffs' failure to exhaust administrative remedies because no exception to exhaustion applies. This Court agrees.

In the Second Circuit, there are three exceptions to the IDEA exhaustion requirement: "(1) it would be futile to resort to the IDEA's due process procedures; (2) an agency has adopted a policy or pursued a practice of general applicability that is contrary to the law; or (3) it is improbable that adequate relief can be obtained by pursuing administrative remedies." *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 297 F.3d 195, 199 (2d Cir. 2002). Plaintiffs have the burden of establishing that an exception is applicable. *Id.*

Here, the gravamen of the Plaintiffs' case is a prayer for injunctive relief ordering Defendants to create and implement an alternative plan for providing compensatory services to affected students with disabilities on an expedited basis. Compl. at 48, ¶¶ D. But Plaintiffs fail to demonstrate futility, fail to identify any specific policy or practice of general applicability that violates the law, and fail to make a showing that it would be improbable to seek adequate relief through the administrative process.

1. The Futility Exception Does Not Apply

"The common element" among cases where administrative remedies would be futile involve allegations that "the framework and procedures for assessing and placing students in appropriate education programs were at issue, or because the nature and volume of complaints were incapable of correction by the administrative hearing process." *J.S. ex rel. N.S. v. Attica Central Schools*, 386 F.3d 107, 114 (2d Cir. 2004). Neither situation applies here.

There is no bright-line rule governing when administrative delays or backlog may rise to the level of futility, but district courts typically excuse exhaustion after a delay of two months to two years. *J.T. v. de Blasio*, 500 F.Supp.3d 137, 194 (S.D.N.Y. Nov. 13, 2020) (citing cases), *appeal pending*, Case No. 20-4128. Even so, no plaintiff in this case could fall within this range

because none of them have filed any due process complaints, direct complaints with the NYSED, or requests for impartial hearings. Compl. ¶¶ 98. Moreover, considering that Plaintiffs commenced this action approximately eight months after the start of the COVID-19 pandemic, which preceded by several months the time when vaccinations initially became widely available, "this court is prepared to make allowances for the fact that the pandemic will [and has] inevitably result[ed] in delays in the [administrative process]." *J.T.*, 500 F.Supp.3d at 194. This Court is sympathetic to the fact that some families may face some difficulty navigating the administrative hearing process, but, as Judge McMahon stated in *J.T.*, "I am not prepared to divorce this lawsuit from the circumstances that precipitated it." *Id.* Furthermore, as City Defendants highlight, the IDEA expressly authorizes the court to award "reasonable attorneys' fees" to prevailing parents of children with disabilities. 20 U.S.C. § 1415(i)(3)(B)(i)(I) ("In any action or proceedings brought under this section, the court, in its discretion, may award reasonably attorneys' fees as part of the costs to a prevailing party who is the parent of a child with a disability . . .).[7] This provision may assist potential plaintiffs who cannot afford legal fees.

2.   The Administrative Process Expressly Provides the Relief Sought

Here, any assigned hearing officer could make an individualized determination about whether, and to what extent, a child is entitled to compensatory services. The 2020 COVID-19 guidance also provides that CSEs may coordinate with parents to make this individualized

---

[7] Plaintiffs have identified no specific policy or practice of general applicability that violates the law. They allege that the COVID-19 outbreak has led to delays in the provision of compensatory services. But their issue is with slowdowns resulting from the pandemic, which is not a policy or practice of either State or City Defendants. In addition, OSE has provided consistent COVID-19 guidance to CSEs to offer a mechanism for obtaining compensatory services, so, between the options to mediate, to file a complaint directly with the NYSED, and to file a due process complaint and request an impartial hearing, "attempting resolution through the administrative process is not futile." *L.A. v. New York City Dep't of Educ.*, No. 1:20-CV-05616-PAC, 2021 WL 1254342, at *5 (S.D.N.Y. Apr. 5, 2021).

determination. In fact, Plaintiffs admit that state and local administrative authorities can remedy

the alleged injuries, specifically regarding the provision of compensatory services. The

Complaint, in relevant part, reads:

> At present, to obtain compensatory services, the parent or guardian for the child
> must file an administrative due process complaint that requests an impartial hearing
> before an impartial hearing officer, who ultimately issues a finding of fact and
> decision of law. The hearing officer will order relief to the student if that parent
> prevails at the hearing, including compensatory services, extended eligibility, or
> both. The IDEA requires impartial hearings to be resolved within seventy-five days.

Compl. ¶¶ 97 (footnote omitted). This is an admission to which Plaintiffs are bound. *Bellefonte*

*Re Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523, 528 (2d Cir. 1985) ("A party's assertion of fact in

a pleading is a judicial admission by which it normally is bound."). That they want to speed up

the process of obtaining compensatory education does not change the fact that the administrative

process provides the exact relief sought. Compensatory services are well within the purview of

the impartial hearing system and constitute an available remedy under the IDEA. This case

"reflect[s] a plaintiff-specific dispute over the quality or methodology of services, which is

routinely and properly resolved through the administrative process." *F.C. v. New York City Dep't*

*of Educ.*, No. 15-CV-6045 (PAE), 2016 WL 8716232, at *2 (S.D.N.Y. Aug. 5, 2016). And, as

explained extensively *supra*, the administrative process is more than capable—and is responsible

for—the provision of compensatory services in the IDEA context.[8]

     Because compensatory services are an available remedy under the IDEA and each

students' IEP would be implicated in determining whether, and to what extent, to furnish an

---

[8] Plaintiffs contend that their claims arising under the Equal Educational Opportunities Act (EEOA), alleging that
non-English speaking parents and students had trouble accessing remote learning services during the COVID-19
pandemic due to Defendants' failure to provide appropriate remote learning in their primary language, is a denial-of-
FAPE claim subject to exhaustion. The exhaustion requirement applies to claims under laws like the IDEA, such as
the Americans with Disabilities Act and the Rehabilitation Act, when a plaintiff seeks relief for the denial of a
FAPE. *See* 20 U.S.C. § 1415(l); *Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 752, 197 L. Ed. 2d 46 (2017). Thus,
Plaintiffs needed to have exhausted their EEOA claim.

award, Plaintiffs must exhaust their claims before coming to federal court. *See Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 246 (2d Cir. 2008). In *Cave*, the plaintiff—like Plaintiffs here—argued that the case was not challenging the content, but the implementation, of an IEP. Specifically, the student requested that his service dog Simba be allowed to accompany him on the school premises. But because his request raised highly individualized and context-specific issues about, among other things, how to accommodate allergic students and teachers, how to minimize classroom distractions, and how to properly care for Simba throughout the day, the Second Circuit concluded that such issues implicated his IEP and would best be dealt with through the administrative process. Like the *Cave* plaintiff's request to bring Simba to school, here, whether and to what extent Plaintiffs are entitled to awards for compensatory services is highly individualized, and would raise issues about remote instruction and in-person learning that are better dealt with through the administrative process. In other words, this case is "not entirely beyond the bounds of the IDEA's educational scheme." *Cave*, 514 F.3d at 248 (footnote omitted).

It is well-established, and the Complaint recognizes, that compensatory services must be reasonably calculated.[9] Because they are based on students' IEPs, it would not be futile for parents to be required to exhaust the administrative process. As a form of *equitable* relief, the impartial hearing system is well-equipped, even if there is some delay in light of the COVID-19 pandemic, in awarding compensatory services.[10] Indeed, an important purpose of the exhaustion requirement is to "permit[ ] an agency to bring its expertise to bear on a problem as well as to

---

[9] Compensatory services constitute prospective equitable relief that requires a school district to fund education to remediate any earlier deprivations in the child's education. Compl. ¶¶ 48. The degree or amount of compensatory services must be reasonably calculated to provide the educational benefits that likely would have accrued from special education services the school district should have supplied in the first place. *Id.*

[10] *See, e.g., N.J. v. NYC Dep't of Educ.*, No. 18-CV-6173 (JMF), 2021 WL 965323, at *4 n.4 (S.D.N.Y. Mar. 15, 2021) (noting that child deprived of a FAPE for several years was awarded compensatory services up to three years of extended eligibility for special education beyond the age of 21 or until he achieved a high school diploma).

correct its own mistakes." *Heldman on Behalf of T.H. v. Sobol*, 962 F.2d 148, 159 (2d Cir. 1992). If Plaintiffs exhausted the administrative process, each student would reap the benefits of agency expertise, from CSEs and hearing officers alike, in developing reasonably calculated compensatory services fit for the individual student (should an individualized determination show that they are entitled to them).

### B. The Court Declines to Exercise Supplemental Jurisdiction

Plaintiffs have a remaining state law claim pursuant to the New York State Education Law against City Defendants. The Court declines to exercise supplemental jurisdiction and dismisses the state law claim without prejudice. Under 28 U.S.C. § 1367(c)(3), the Court may exercise supplemental jurisdiction over Plaintiffs' remaining state law claims after dismissing "all claims over which it has original jurisdiction." However, the Second Circuit encourages courts to avoid exercising supplemental jurisdiction. "[I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 183 (2d Cir. 2004) (quoting *Castellano v. Bd. of Trustees*, 937 F.2d 752, 758 (2d Cir. 1991)). Having dismissed all of Plaintiffs' federal denial-of-FAPE claims, and there being no other basis for federal jurisdiction over this case, the Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law claim. *See* 28 U.S.C. § 1367(c)(3); *Boustany v. Xylem Inc.*, 235 F.Supp.3d 486, 496-97 (S.D.N.Y. 2017). Accordingly, the claim is dismissed without prejudice.

### VI.    CONCLUSION

Because Plaintiffs seek relief that is expressly available under the IDEA through the administrative process and no exception to its exhaustion-mandate applies, they were required to exhaust administrative remedies. This Court therefore lacks subject matter jurisdiction over this action.[11] This case is dismissed without prejudice to renewal upon exhaustion. Accordingly, the pending motions to stay discovery (ECF Nos. 77 and 80) are denied as moot. The Clerk of Court is respectfully directed to terminate the motions at ECF Nos. 35, 37, 77, and 80 and to close this case.

**SO ORDERED.**

**Dated: March 28, 2022**

**New York, New York**                                    **The Hon. Andrew L. Carter, Jr.**

                                                           **United States District Judge**

---

[11] The Second Circuit has long held that failure to exhaust IDEA claims strips courts of subject matter jurisdiction and has recognized that it is "arguably bound by those earlier statements." *Ventura de Paulino v. New York City Dep't of Educ.*, 959 F.3d 519, 530 (2d Cir. 2020), *cert. denied,* 141 S. Ct. 1075, 208 L. Ed. 2d 534 (2021), *reh'g denied,* 141 S. Ct. 1530, 209 L. Ed. 2d 262 (2021). Because the Second Circuit has not unambiguously departed from the position that exhaustion of IDEA claims is jurisdictional, and not an affirmative defense, this Court declines to treat exhaustion as a mandatory claims-processing rule. But even if that were the case, Plaintiffs provide no basis for how or why they would be entitled to waiver or forfeiture here. *See Ventura de*, 959 F.3d at 530 n. 44 (quoting *Coleman v. Newburgh Enlarged City School District*, 503 F.3d 198, 204 (2d Cir. 2007)).