**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| |
|---|
| **Z.Q., et al.,** |
| *Plaintiffs,* |
| -against- |
| **NEW YORK CITY DEPARTMENT OF EDUCATION, et al.,** |
| *Defendants.* |

**1:20-cv-09866 (ALC)**

**OPINION**

**ANDREW L. CARTER, JR., United States District Judge:**

Plaintiffs are students with disabilities and their parents. They initiated this putative action against two sets of defendants: the New York State Education Department ("NYSED") and NYSED Commissioner Dr. Betty Rosa, and the New York State Board of Regents (collectively, "State Defendants"); and the City of New York, Mayor Eric Adams, the New York City Department of Education ("NYCDOE"), the New York City Board of Education ("NYCBOE"), and Richard Carranza, the Chancellor of the New York City School District (collectively, the "City Defendants"). ECF No. 1, Compl. Plaintiffs assert claims under the Individuals with Disabilities Education Act ("IDEA"), the N.Y. Education Law, the Rehabilitation Act ("Section 504"), and the Equal Educational Opportunities Act ("EEOA") against Defendants.

Defendants now move to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction over State Defendants, and Fed.R.Civ.P. 12(b)(6) for failure to state a claim. ECF Nos. 103, 114. After careful review, Defendants' Motions, ECF Nos. 103, 114, are **GRANTED**. State Defendants are **DISMISSED** for lack of subject matter jurisdiction. Plaintiffs' EEOA claim is **DISMISSED**. Defendants' motions to dismiss the IDEA claim is **DENIED**. Plaintiffs are **GRANTED** leave to amend their Complaint.

1

## BACKGROUND

### I.     Statement of Facts

The IDEA ensures that children with disabilities receive a free appropriate public education, or "FAPE." 20 U.S.C. §§ 1400(d)(1)(A)–(B). School officials, teachers, and a child's parents create an individualized education program, or "IEP" to meet a child's educational needs. *Id.* § 1414(d). The IDEA enables parents of a student with a disability to challenge the recommendations made by a school district for a student to request an impartial due process hearing. 20 U.S.C. § 1415(b)(6), (f)(1). The complaint generally triggers a "[p]reliminary meeting" between the school district and the parent. 20 U.S.C. § 1415(f)(1)(B)(i). If the matter is not resolved, the parties proceed to a due process hearing before an impartial hearing officer ("IHO"). *Id.* § 1415(f)(1)(B)(ii). The IHOs cannot be "an employee of the State educational agency or the local educational agency involved in the education or care of the child." *Id.* § 1415(f)(3)(A)(i)(I). IHOs cannot have "a personal or professional interest that conflicts with [their] objectivity in the hearing," and must "possess" the "knowledge" and "ability" to understand the applicable legal provisions and to conduct hearings and to render and write decisions "in accordance with appropriate, standard legal practice." *Id.* § 1415(f)(3)(A). Absent lawful extensions, IHOs must render a final decision "not later than 45 days after the expiration of the" resolution period. 34 C.F.R. § 300.515(a). If a party is dissatisfied with an IHO's decision, they can appeal it to a state review officer ("SRO") in the NYSED's Office of State Review. 20 U.S.C. § 1415(g); N.Y. Educ. Law § 4404(1)–(2). A party still dissatisfied may challenge the SRO's decision in state or federal court. N.Y. Educ. Law § 4404(3); 20 U.S.C. §§ 1415(i)(1)(B), (2)(A).

In New York, localities and the State have distinct roles. Local educational agencies ("LEAs") formulate IEPs, conduct due process hearings, and provide a FAPE to every student with a disability. N.Y. Educ. Law § 4402; 20 U.S.C. § 1401(19)(A). The state educational agency ("SEA") NYSED supervises school districts and trains and certifies impartial hearing officers ("IHOs"). N.Y. Educ. Law §§ 4403, 4404(1)(c); 20 U.S.C. §§ 1401(32), 1412(a)(11).  In this case, NYCDOE is the relevant LEA.

In response to the COVID-19 pandemic, on March 16, 2020, Governor Andrew Cuomo directed the closure of every school in New York as of March 18, 2020 for a period of two weeks. *See* N.Y. Exec. Order No. 202.4. In this and subsequent executive orders, the Governor directed school districts to "develop a plan for alternative instructional options" while the schools were closed. *Id.*; N.Y. Exec. Order No. 202.28. In March 2020, the United States Department of Education ("USDOE") published guidance documents. The USDOE "straightforwardly authorized the provision of distance instruction in bolded letters: '**To be clear: ensuring compliance with the Individuals with Disabilities Education Act (IDEA), Section 504 of the Rehabilitation Act (Section 504), and Title II of the Americans with Disabilities Act should not prevent any school from offering educational programs through distance instruction.**'" *Id.* at 150 (quoting USDOE Fact Sheet) (emphasis in original). The "USDOE acknowledged that, 'these exceptional circumstances may affect how all educational and related services and supports are provided…' and that 'school districts must remember that the provision of FAPE may include, as appropriate, special education and related services *provided through distance instruction provided virtually, online, or telephonically*.'" *Id.* (quoting USDOE Fact Sheet) (emphasis in original). In the event that "'a child does not receive services after an extended period of time,'" the USDOE recommended "that the school 'make an

*individualized determination* whether and to what extent compensatory services may be needed, consistent with applicable requirements, including to make up for any skills that may have been lost.'" *Id.* at 150-51 (quoting USDOE Q&A) (emphasis in original). In April 2020, June 2020 and October 2020, the NYSED additional guidance documents to school districts regarding the providing services to students with disabilities during the pandemic, which included instructions on compensatory services.[1] Specifically, the June 2020 Guidance identifies the documentation that local Committees on Special Education ("CSEs") should consider when determining whether a student requires compensatory services, describes the types of compensatory services that a CSE can offer, and in the event the CSE does not offer compensatory services, the ways parents of students with disabilities can resolve disputes with school districts over the provision of compensatory services. June 2020 Guidance at 3-6. In June 2021, NYSED released supplemental guidance regarding compensatory services.

"Beginning in September 2020, NYCDOE reopened its schools to all students, abled and disabled. It provided all parents a choice between two ways of 'going to school:' 100% remote learning, or a blended model where students attend school several days a week and engage in remote learning other days." *J.T. v. de Blasio*, 500 F. Supp. 3d 137, 153 (S.D.N.Y. 2020).

Plaintiffs allege that New York City public school students with disabilities did not receive a FAPE during the COVID-19 pandemic due to problems with remote learning. They also allege that the NYCDOE administrative hearing process is unable to resolve what compensatory services for to students who did not receive a FAPE. Plaintiffs seek an order

---

[1] The April 2020 Guidance is available at https://www.nysed.gov/sites/default/files/programs/coronavirus/special-education-supplement-1-covid-qa-memo-4-27-2020.pdf; the June 2020 Guidance is available at https://www.nysed.gov/sites/default/files/programs/coronavirus/special-education-supplement-2-covid-qa-memo-6-20-2020.pdf; and the October 2020 Guidance is available at https://www.nysed.gov/sites/default/files/programs/reopening-schools/special-education-faq-2020-21.pdf.

directing the State and City Defendants to develop, implement and fund "an expedited process and plan" for providing compensatory services to students with disabilities who did not receive a FAPE during the pandemic.

### II.   Procedural History

This action was initiated on November 23, 2020 by a cohort of students and their parents as Plaintiffs. ECF No. 1.

This Court dismissed Plaintiffs' federal claims for failure to exhaust available administrative remedies because they did not seek compensatory services through NYCDOE's complaint resolution process before filing this action. This Court also declined to exercise supplemental jurisdiction over the state claim. On appeal, the Second Circuit vacated this Court's judgment dismissing the Complaint for failure to exhaust administrative remedies and remanded the action. *Z.Q. by G.J. v. N.Y.C. Dep't of Educ.*, No. 22-939-CV, 2023 WL 1486387 (2d Cir. Feb. 3, 2023) (summary order).

State Defendants moved to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) April 24, 2023, ECF No. 103, and City Defendants moved to dismiss on May 23, 2023, ECF No. 114. Plaintiffs filed their opposition to the State Defendants' motion on May 15, 2023, ECF No. 112, and City Defendants' motion on June 13, 2023, ECF No. 121. State Defendants filed their reply on June 2, 2023, ECF No. 116, and City Defendants filed their reply on June 27, 2023, ECF No. 125. This matter is fully briefed.

### STANDARD OF REVIEW

### I.   Federal Rule of Civil Procedure 12(b)(1)

In this Circuit, a case is "'properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it.'"

*Eliahu v. Jewish Agency for Israel*, 919 F.3d 709, 712 (2d Cir. 2019) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). A challenge to a plaintiff's standing is analyzed under Rule 12(b)(1) as a question of subject matter jurisdiction. *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56–57 (2d Cir. 2016) ("At issue here are defendants' Rule 12(b)(1) challenges to standing at the pleading stage.").

When considering a motion to dismiss for lack of subject matter jurisdiction under Fed R. Civ. P. 12(b)(1), "the district court must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (citing *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011) (per curiam)). Where jurisdictional facts are at issue, "'the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits.'" *Id*. (citing *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003)). But "the party asserting subject matter jurisdiction 'has the burden of proving by a preponderance of the evidence that it exists.'" *Id*. (citing *Makarova*, 201 F.3d at 113).

## II.     Federal Rule of Civil Procedure 12(b)(6)

When considering a motion to dismiss under Federal Rules of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985). The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Moreover, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Id*. at 663.

Deciding whether a complaint states a plausible claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 678–79 (2009) (quoting *Twombly*, 550 U.S. at 570).

### III.    Federal Rule of Civil Procedure 12(c)

A Rule 12(c) motion may be granted "where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings." *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988) (citations omitted). Rule 12(c) motions for judgment on the pleadings "are subject to the same standards applicable to Rule 12(b)(6) motions to dismiss." *Mraz v. JP Morgan Chase Bank, N.A.*, No. 17 CV 6380, 2019 WL 1471100 at *2, (E.D.N.Y. Apr. 3, 2019) (citing *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013)).

### DISCUSSION

### I.    Standing

State Defendants contend that Plaintiffs lack standing because they have not pleaded that State Defendants caused an injury. This is because the local school districts were required to develop plans for "alternative instructional options" during mandated school closures during the pandemic. Compl. at ¶¶ 41, 46. New York has a procedure for students to receive compensatory services for the denial of FAPE, *id.* at ¶ 97, and the NYCDOE administers compensatory services and determines whether provision of those services is warranted. State Defendants argue that "Plaintiff[s] could have obtained complete relief from the District Defendants if they were to prevail in this action. Thus, any claims against [NYSED] would have been superfluous." *Avaras v. Clarkstown Cent. Sch. Dist.*, 2019 WL 4600870, at *14 (S.D.N.Y. Sept. 21, 2019). *See also B.J.S. v. State Educ. Dep't/Univ. of New York*, 699 F. Supp. 2d 586, 610 (W.D.N.Y. 2010) (same); *Bruschini v. Bd. of Educ. of Arlington Centr. Sch. Dist.*, 1995 WL 807107, at * 2 (S.D.N.Y. May 16, 1995) (dismissing IDEA, Section 504 and Section 1983 claims against NYSED and the Commissioner where plaintiff could "obtain complete relief from the local board of education.").

Plaintiffs contend they have standing to sue State Defendants because they allege that the State violated its oversight obligations, and that those violations were a cause of plaintiffs' injury. Plaintiffs cite to *M.H. ex rel. K.H. v. Mount Vernon City Sch. Dist.* for the proposition that an SED is a proper defendant where the SED "identified and detailed a district's failures to meet state-imposed targets for performance in special education[.]" No. 13-cv-3596, 2014 WL 901578, at *12 (S.D.N.Y. Mar. 3, 2014).

Under the IDEA, an SED is responsible for ensuring the State's compliance with the requirements of the statute. However, the statute gives the SEA general supervisory responsibilities and discretion to monitor compliance. *A.A. ex rel. J.A. v. Philips*, 386 F.3d 455, 459 (2d Cir. 2004); *see also C.L. v. Hastings-on-Hudson Union Free Sch. Dist.*, 2015 WL

1840507, at *5 (S.D.N.Y. Apr. 21, 2015). That the SED Commissioner "enjoys general supervisory authority over public education in New York, including an obligation to assure the State's obligation to comply fully with the [IDEA] . . ., is an insufficient basis upon which to impose legal responsibility upon" the Commissioner or SED. *B.J.S.*, 699 F. Supp. at 602 (collecting cases).

Plaintiffs allege the SED failed to exercise its oversight authority over the NYCDOE's purported failure to provide a FAPE to students with disabilities during the pandemic. Compl. at ¶¶ 58-148. Yet Plaintiffs admit that the SED indeed issued guidance to school districts during the pandemic regarding FAPE and compensatory service obligations. *Id.* at ¶¶ 44, 49-54. Absent any specific allegations of the SED's role in purported wrongdoing, Plaintiffs have not shown that "the State was a direct contributor—even if not the only contributor—to Plaintiff's injury[.]" *Engwiller v. Pine Plains Cent. Sch. Dist.*, 110 F. Supp. 2d 236, 247 (S.D.N.Y. 2000).

As such, Plaintiffs have not established Article III standing to sue the State Defendants.

## II.     Judgment on the Pleadings

City Defendants moved for judgment on the pleadings, arguing the relief Plaintiffs seek is not available under the IDEA. Under the statute, courts addressing IDEA claims may "grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C)(iii). Plaintiffs contend the NYCDOE "failed to provide services and program consistent with these students' IEPs during remote learning." Compl. at ¶ 4. Plaintiffs argue that all members of their proposed class are entitled to compensatory education. The NYCDOE has a process for determining on an individual basis whether compensatory education for a student is warranted, and a student's parent may seek compensatory education. "[A]n award of compensatory education is appropriate only for gross violations of the IDEA." *Somoza v. N.Y.C. Dep't of Educ.*, 538 F.3d 106, 109 n.2

(2d Cir. 2008) (citation omitted). City Defendants reject the notion that every class member is entitled to compensatory education. Defendants also argue that parents may discuss the need for compensatory education through individualized CSE meetings. Compl. at ¶¶ 39, 50, 54. Parents can also request an IEP meeting pursuant to 34 CFR § 300.324(a)(4)(i).

City Defendants argue that under the IDEA, they are required to provide remedies available under the statute, and "not necessarily [] the kind [of relief] the person prefers." *Wang v. Williamsville Cent. Sch. Dist.*, 2010 U.S. Dist. LEXIS 39468, *18-19 (W.D.N.Y. Apr. 18, 2010) (citing *Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist.*, 288 F.3d 478, 487-88 (2d Cir. 2002) (internal citations and quotation marks omitted). Plaintiffs seek "the creation and implementation of a specific process and plan to remedy the denials of Plaintiffs' and Class members' rights, which will promptly afford these students the education to which they are legally entitled," and seek the appointment of a Special Master to oversee that process. Compl. at ¶ 13. Plaintiffs seek "system-wide relief that is outside the scope of individual impartial hearing officers' jurisdiction." *Id.* at ¶ 148.

Plaintiffs argue that they can pursue injunctive and process-oriented relief under the IDEA. The statute "vests the court with all the authority it needs to remedy [] violations through injunctive relief. For decades, courts across the country have done just that, ordering or approving structural relief when IDEA violations required it." *DL v. D.C.*, 860 F.3d 713, 731 (D.C. Cir. 2017) (permitting parents to challenge systemic defects in district's policies through an injunction). *See also Jose P. v. Ambach*, 669 F.2d 865, 867 (2d Cir. 1982) (affirming remedial plan developed by special master to evaluate students with disabilities and place them in an appropriate program in a timeline fashion).

Defendants attempt to draw a distinction between the cases Plaintiffs cite as seeking "systemic relief . . . intended to correct the *cause* of the alleged FAPE deprivations, not to provide a remedy for each individual for the *effects* of those FAPE deprivation." ECF No. 125 at 7 (emphasis in original). But this is a distinction without a difference. The Court has wide discretion to grant injunctive and process-oriented relief. 20 U.S.C. § 1415(i)(2)(C)(iii). Here, Plaintiffs seek system-wide process-oriented relief for students with disabilities that have been denied a FAPE and compensatory services during the pandemic. That is sufficient to survive a motion to dismiss.

### III.    Plaintiffs' EEOA Claim Must Be Dismissed.

Under the EEOA, "[n]o State shall deny equal educational opportunities to an individual on account of his or her race, color, sex, or national origin, by . . . the failure by an educational agency to take appropriate action to overcome language barriers that impede equal participation by its students in its instructional programs." 20 U.S.C. § 1703(f). To state a valid claim under the EEOA, "the denial of the equal educational opportunity—in § 1703(f)'s case, the language barrier that is not being overcome—must stem from race, color, sex, or national origin, rather than from, for example, a cognitive disability covered by a different remedial scheme, like the [IDEA]." *Issa v. Sch. Dist. of Lancaster*, 847 F.3d 121, 140 (3d Cir. 2017). Defendants seek dismissal of Plaintiffs' EEOA claim for failure to allege that the denial of education opportunities were due to Plaintiffs' race or national origin.

Here, Plaintiffs allege that City Defendants did not take action to overcome Plaintiffs' language barriers. Compl. at ¶¶ 56, 72-75, 104-05, 107, 117, 203-04. For example, Plaintiffs allege that some students were not provided with interpreters or instructional materials in their primary language. *Id.* at ¶ 74. Non-English-speaking parents were also not provided information

on remote-learning plans and instructions. *Id.* at ¶ 75. These barriers prevent students from receiving educational services. *Id.* at ¶¶ 74-75.

In this case, the Complaint is devoid of allegations that the language barriers Plaintiffs faced were due to their national origin, which is required to state a claim under the EEOA. As such, the EEOA claims must be dismissed.

## CONCLUSION

Defendants now move to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction over State Defendants, and Fed.R.Civ.P. 12(b)(6) for failure to state a claim. ECF Nos. 103, 114. After careful review, Defendants' Motions, ECF Nos. 103, 114, are **GRANTED**. State Defendants are **DISMISSED** for lack of subject matter jurisdiction. Plaintiffs' EEOA claim is **DISMISSED**. Defendants' motions to dismiss the IDEA claim is **DENIED**.

Rule 15(a)(2) states "the court should freely give leave [to amend] when justice so requires." The Supreme Court has instructed that "this mandate is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182 (1962). However, it is ultimately "within the sound discretion of the court whether to grant leave to amend." *John Hancock Mut. Fife Ins. Co. v. Amerford Int'l Corp.*, 22 F.3d 458, 462 (2d Cir. 1994) (citing *Foman*, 371 U.S. at 178).

Because Plaintiffs fail to plead adequate facts to support certain claims, the Court will afford Plaintiffs the opportunity to amend their Complaint to attempt to cure its deficiencies. Plaintiffs may file their Amended Complaint on or before **April 11, 2024**.

**SO ORDERED.**

Dated: March 28, 2024
    New York, New York

                            **ANDREW L. CARTER, JR.**
                            **United States District Judge**